# U.S. District Court
## Southern District of Iowa (Central)
## CIVIL DOCKET FOR CASE #: <u>4:24−cv−00227−SMR−SBJ</u>
### *Internal Use Only*

| | |
|---|---|
| Drake University v. Des Moines Area Community College Foundation | Date Filed: 07/08/2024 |
| Assigned to: Chief Judge Stephanie M. Rose | Jury Demand: Both |
| Referred to: Chief Magistrate Judge Stephen B. Jackson, Jr | Nature of Suit: 840 Trademark |
| Cause: 15:1114 Trademark Infringement | Jurisdiction: Federal Question |
| | Jury Trial: 06/08/2026 |
| | FPT: 05/14/2026 11:00 AM |

**Plaintiff**

| | | |
|---|---|---|
| **Drake University** | represented by | **John Gilbertson** |
| | | ZARLEYCONLEY PLC |
| | | 580 MARKET STREET |
| | | SUITE 101 |
| | | WEST DES MOINES, IA 50266 |
| | | 515−558−0200 |
| | | Email: jgilbertson@zarleyconley.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |
| | | |
| | | **Joshua James Conley** |
| | | ZARLEYCONLEY PLC |
| | | 580 MARKET STREET |
| | | SUITE 101 |
| | | WEST DES MOINES, IA 50266 |
| | | 515−558−0200 |
| | | Fax: 515−558−7790 |
| | | Email: jconley@zarleyconley.com |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |

V.

**Defendant**

| | | |
|---|---|---|
| **Des Moines Area Community College Foundation** | represented by | **R. Scott Johnson** |
| | | FREDRIKSON & BYRON, P.A. (DSM) |
| | | 111 E. GRAND AVENUE |
| | | SUITE 301 |
| | | DES MOINES, IA 50309 |
| | | 515−242−8930 |
| | | Fax: 515−242−8950 |
| | | Email: rsjohnson@fredlaw.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

*Designation: Retained*

**Cara S. Donels**
FREDRIKSON & BYRON, P.A. (DSM)
111 E. GRAND AVENUE
SUITE 301
DES MOINES, IA 50309
515–242–8924
Fax: 515-242-8950
Email: cdonels@fredlaw.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Erin Maureen Boggess**
FREDRIKSON & BYRON, P.A. (DSM)
111 E. GRAND AVENUE
SUITE 301
DES MOINES, IA 50309
515–943–0364
Email: eboggess@fredlaw.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Laura L. Myers**
FREDRIKSON & BYRON, P.A. (MN)
60 SOUTH SIXTH STREET
SUITE 1500
MINNEAPOLIS, MN 55402
612–492–7000
Fax: 612-492-7077
Email: lmyers@fredlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Defendant**

| | | |
|---|---|---|
| **Des Moines Area Community College** | represented by | **R. Scott Johnson** |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Cara S. Donels**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Erin Maureen Boggess**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

Laura L. Myers
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Counter Claimant**

**Des Moines Area Community College**     represented by     **R. Scott Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Cara S. Donels**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Erin Maureen Boggess**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Laura L. Myers**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Counter Claimant**

**Des Moines Area Community College
Foundation**     represented by     **R. Scott Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Cara S. Donels**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Erin Maureen Boggess**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Laura L. Myers**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

V.

**Counter Defendant**

**Drake University**                    represented by **John Gilbertson**
                                        (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*
                                        *Designation: Retained*

                                        **Joshua James Conley**
                                        (See above for address)
                                        *ATTORNEY TO BE NOTICED*
                                        *Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/08/2024 | 1 | COMPLAINT against Des Moines Area Community College Foundation Filing fee paid in the amount of $ 405, receipt number AIASDC–5497172., filed by Drake University. Notice of Dismissal for lack of Service deadline set for 10/7/2024. Rule 16 Notice of Dismissal set for 10/7/2024. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Exhibit, # 36 Exhibit, # 37 Exhibit, # 38 Exhibit, # 39 Exhibit, # 40 Exhibit, # 41 Exhibit, # 42 Exhibit, # 43 Exhibit, # 44 Exhibit, # 45 Exhibit, # 46 Exhibit, # 47 Exhibit, # 48 Exhibit, # 49 Exhibit, # 50 Exhibit, # 51 Exhibit, # 52 Exhibit, # 53 Exhibit, # 54 Exhibit, # 55 Exhibit, # 56 Exhibit, # 57 Exhibit, # 58 Exhibit, # 59 Exhibit, # 60 Exhibit, # 61 Exhibit, # 62 Exhibit, # 63 Exhibit, # 64 Exhibit, # 65 Exhibit, # 66 Exhibit, # 67 Exhibit, # 68 Exhibit, # 69 Exhibit, # 70 Exhibit, # 71 Exhibit, # 72 Exhibit, # 73 Exhibit, # 74 Exhibit, # 75 Exhibit, # 76 Exhibit, # 77 Exhibit, # 78 Exhibit, # 79 Exhibit, # 80 Exhibit, # 81 Exhibit, # 82 Exhibit, # 83 Exhibit, # 84 Exhibit, # 85 Exhibit, # 86 Exhibit, # 87 Exhibit, # 88 Exhibit, # 89 Exhibit, # 90 Exhibit, # 91 Exhibit, # 92 Exhibit, # 93 Exhibit, # 94 Exhibit, # 95 Exhibit, # 96 Exhibit, # 97 Exhibit)(Gilbertson, John) (Entered: 07/08/2024) |
| 07/08/2024 | 2 | NOTICE of Appearance by Joshua James Conley on behalf of Drake University (Conley, Joshua) (Entered: 07/08/2024) |
| 07/08/2024 | | Chief Judge Stephanie M. Rose added. Judge Stephen H. Locher no longer assigned to case. (btg) (Entered: 07/08/2024) |
| 07/08/2024 | 3 | NOTICE by Drake University *of request to Fredrikson Byron to Withdraw from Representing Defendant*. (Attachments: # 1 Exhibit)(Conley, Joshua) (Entered: 07/08/2024) |
| 07/08/2024 | 4 | MOTION for Preliminary Injunction by Drake University. Responses due by 7/22/2024. (Conley, Joshua) (Entered: 07/08/2024) |
| 07/08/2024 | 5 | |

| | | |
|---|---|---|
| | | MOTION to file overlength brief *in support of Motion for Preliminary Injunction* by Drake University.Motions referred to Stephen B. Jackson, Jr. Responses due by 7/22/2024. (Attachments: # 1 Brief in Support, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit)(Conley, Joshua) (Entered: 07/08/2024) |
| 07/08/2024 | 6 | TEXT ORDER granting 5 Plaintiff's Motion For Leave To File Overlength Brief In Support Of Motion For Preliminary Injunction. Pursuant to Local Rule 7(h), the Clerk of Court is directed to detach and docket the brief and exhibits attached to the motion. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr. on 7/8/2024. (sbj) (Entered: 07/08/2024) |
| 07/09/2024 | 7 | Summons/Corporate Disclosure Packet Note: Counsel should download the attached summons and/or corporate disclosure packet, if applicable. In compliance with Rule 4 of the Rules of Civil Procedure for summons and Local Rule 7.1 for the disclosure statements. Corporate Disclosure Statement deadline set for plaintiff 7/30/2024. (Attachments: # 1 7.1 packet) (btg) (Entered: 07/09/2024) |
| 07/09/2024 | 8 | BRIEF by Drake University re 4 MOTION for Preliminary Injunction . (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22) (btg) (Entered: 07/09/2024) |
| 07/10/2024 | 9 | REPORT on the filing or determination of an action regarding patent and/or trademark number(s) See Complaint. (Attachments: # 1 Complaint) (btg) (Entered: 07/10/2024) |
| 07/10/2024 | 10 | MOTION to Amend/Correct 8 Brief/Other,, *in support of Motion for Preliminary Injunction (Dkt. 8)* by Drake University.Motions referred to Stephen B. Jackson, Jr. Responses due by 7/24/2024. (Attachments: # 1 Brief in Support Proposed Amended Brief in Support of Drake's Motion for Preliminary Injunction (Dkt. 8) (redline), # 2 Brief in Support Proposed Amended Brief in Support of Drake's Motion for Preliminary Injunction (Dkt. 8) (clean), # 3 Exhibit Proposed Amended Exhibit 98 (Dkt. 8–1) (redline), # 4 Exhibit Proposed Amended Exhibit 98 (Dkt. 8–1) (clean), # 5 Exhibit 120)(Gilbertson, John) (Entered: 07/10/2024) |
| 07/10/2024 | 11 | TEXT ORDER granting 10 Plaintiff's Motion for Leave to Amend Plaintiff's Brief in Support of Its Motion for Preliminary Injunction. Plaintiff is granted leave to file its amended brief and referenced supporting material and must do so by July 11, 2024. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr. on 7/10/2024. (jeb) (Entered: 07/10/2024) |
| 07/11/2024 | 12 | BRIEF (Amended) by Drake University re 4 MOTION for Preliminary Injunction . (Attachments: # 1 Exhibit 98 – Declaration (Amended to include reference to Exhibit 120), # 2 Exhibit 120 – Placeholder for KCCI Video)(Gilbertson, John) (Entered: 07/11/2024) |
| 07/11/2024 | 13 | SUMMONS Returned Executed by Drake University. Des Moines Area Community College Foundation served on 7/9/2024, answer due 7/30/2024. (Gilbertson, John) (Entered: 07/11/2024) |
| 07/11/2024 | 14 | |

| | | |
|---|---|---|
| | | CERTIFICATE *of Service of Documents on Defendant Pursuant to Fed. R. Civ. P. 5(d)(1)(B)(i)* by Drake University. (Gilbertson, John) (Entered: 07/11/2024) |
| 07/16/2024 | 15 | MOTION to add party *Des Moines Area Community College* by Drake University.Motions referred to Stephen B. Jackson, Jr. Responses due by 7/30/2024. (Attachments: # 1 Exhibit 1 – Email, # 2 Exhibit 2 – DMACC Public Statement, # 3 Exhibit Proposed Amended Complaint (redline), # 4 Exhibit Proposed Amended Complaint (clean), # 5 Exhibit Amended Motion for Preliminary Injunction (redline), # 6 Exhibit Amended Motion for Preliminary Injunction (clean), # 7 Exhibit Amended Brief iso Motion for Preliminary Injunction (redline), # 8 Exhibit Amended Brief iso Motion for Preliminary Injunction (clean))(Gilbertson, John) (Entered: 07/16/2024) |
| 07/16/2024 | 16 | TEXT ORDER granting in part and denying in part 15 Plaintiff's Motion for Leave to Amend Complaint and Preliminary Injunction Materials to Add Party. Plaintiff is granted leave to file the proposed amended complaint and amended motion for preliminary injunction and must file such materials on the docket by July 17, 2024. Defendants have until July 31, 2024, to file an answer or other responsive pleading to the amended complaint and respond to the amended motion for preliminary injunction. Plaintiff's counsel must serve a copy of this Text Order on known counsel for defendants. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr. on 7/16/2024. (jeb) (Entered: 07/16/2024) |
| 07/17/2024 | 17 | First AMENDED COMPLAINT against All Defendants. All Defendants., filed by Drake University.(Gilbertson, John) (Entered: 07/17/2024) |
| 07/17/2024 | 18 | Amended MOTION for Preliminary Injunction by Drake University. Responses due by 7/31/2024. (Attachments: # 1 Brief in Support)(Gilbertson, John) (Entered: 07/17/2024) |
| 07/17/2024 | 19 | CERTIFICATE *of Service* re 16 Order on Motion to Add Party,, by Drake University. (Gilbertson, John) (Entered: 07/17/2024) |
| 07/31/2024 | 20 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Des Moines Area Community College Foundation. Responses due by 8/14/2024. (Attachments: # 1 Brief in Support, # 2 Affidavit of R. Scott Johnson, # 3 Exhibit 1, Declaration of R. Scott Johnson, # 4 Exhibit 2, Declaration of R. Scott Johnson)(Johnson, R.) (Entered: 07/31/2024) |
| 07/31/2024 | 21 | ANSWER to 17 Amended Complaint , COUNTERCLAIM against Drake University by Des Moines Area Community College. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U)(Johnson, R.) (Entered: 07/31/2024) |
| 07/31/2024 | 22 | MOTION for Leave to Appear Pro Hac Vice Receipt Number: AIASDC−5517629 Fee paid in the amount of $100. by Des Moines Area Community College, Des Moines Area Community College Foundation. (Myers, Laura) (Entered: 07/31/2024) |
| 07/31/2024 | 23 | MOTION to file overlength brief by Des Moines Area Community College, Des Moines Area Community College Foundation.Motions referred to Stephen B. Jackson, Jr. Responses due by 8/14/2024. (Attachments: # 1 Exhibit A, Motion for Leave to File Overlength Brief, # 2 Brief in Resistance to Plaintiff's Motion for Preliminary Injunction, # 3 Affidavit of Todd G. Jones, # 4 Exhibit A, Declaration of Todd G. Jones, # 5 Exhibit B, Declaration of Todd G. Jones, # 6 Exhibit C, Declaration of Todd |

| | | G. Jones, # <u>7</u> Exhibit D, Declaration of Todd G. Jones, # <u>8</u> Exhibit E, Declaration of Todd G. Jones, # <u>9</u> Affidavit of Laura L. Myers, # <u>10</u> Exhibit 1, Declaration of Laura L. Myers, # <u>11</u> Exhibit 2, Declaration of Laura L. Myers, # <u>12</u> Exhibit 3, Declaration of Laura L. Myers, # <u>13</u> Exhibit 4, Declaration of Laura L. Myers, # <u>14</u> Exhibit 5, Declaration of Laura L. Myers, # <u>15</u> Exhibit 6, Declaration of Laura L. Myers, # <u>16</u> Exhibit 7, Declaration of Laura L. Myers, # <u>17</u> Exhibit 8, Declaration of Laura L. Myers, # <u>18</u> Exhibit 9, Declaration of Laura L. Myers, # <u>19</u> Exhibit 10, Declaration of Laura L. Myers, # <u>20</u> Exhibit 11, Declaration of Laura L. Myers, # <u>21</u> Affidavit of R. Scott Johnson, # <u>22</u> Exhibit A, Declaration of R. Scott Johnson, # <u>23</u> Exhibit B, Declaration of R. Scott Johnson, # <u>24</u> Exhibit C, Declaration of R. Scott Johnson)(Johnson, R.) Modified on 8/1/2024 – linked to <u>18</u> (nla). (Entered: 07/31/2024) |
|---|---|---|
| 07/31/2024 | <u>24</u> | MOTION to Seal *Docket Entries 20, 21, and 23* by Drake University.Motions referred to Stephen B. Jackson, Jr. Responses due by 8/14/2024. (Gilbertson, John) Modified on 8/1/2024 – linked to <u>20</u> , <u>21</u> , and <u>23</u> (nla). (Entered: 07/31/2024) |
| 07/31/2024 | <u>25</u> | RESPONSE to Motion re <u>23</u> MOTION to file overlength brief filed by Drake University. Replies due by 8/7/2024.(Gilbertson, John) (Entered: 07/31/2024) |
| 08/01/2024 | 26 | TEXT ORDER granting <u>22</u> Motion for Leave to Appear Pro Hac Vice Laura L. Myers. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr on 8/1/2024. (kjw) (Entered: 08/01/2024) |
| 08/01/2024 | <u>27</u> | RESPONSE to Motion re <u>24</u> MOTION to Seal *Docket Entries 20, 21, and 23* filed by Des Moines Area Community College, Des Moines Area Community College Foundation. Replies due by 8/8/2024. (Attachments: # <u>1</u> Affidavit of R. Scott Johnson, # <u>2</u> Exhibit 1, Declaration of R. Scott Johnson, # <u>3</u> Exhibit 2, Declaration of R. Scott Johnson, # <u>4</u> Exhibit 3, Declaration of R. Scott Johnson, # <u>5</u> Affidavit of Laura L. Myers)(Johnson, R.) (Entered: 08/01/2024) |
| 08/02/2024 | 28 | TEXT ORDER temporarily and provisionally granting <u>24</u> Plaintiff's Motion to Seal Docket Entries 20, 21, and 23 (Expedited Relief Requested). Given the request for expedited relief, the motion is granted temporarily until a final determination is made after full consideration of various matters which have been raised within the motion and Defendants' Resistance <u>27</u> . Accordingly, the Clerk of Court is directed to place Docket Nos. 20, 21, and 23 under seal provisionally subject to further consideration and order of the Court. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr. on 8/2/2024. (jeb) (Entered: 08/02/2024) |
| 08/02/2024 | 29 | TEXT ORDER granting <u>23</u> Defendants' Motion for Leave to File Overlength Brief. Defendants are granted leave to file the proposed overlength brief. However, for the reasons set forth in the Text Order at Docket No. 28, defendants must file the brief and supporting materials under seal provisionally subject to further consideration and order of the Court, and do so by August 5, 2024. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr. on 8/2/2024. (jeb) (Entered: 08/02/2024) |
| 08/02/2024 | <u>30</u> | Sealed Document re <u>18</u> Amended MOTION for Preliminary Injunction by Des Moines Area Community College, Des Moines Area Community College Foundation. (Attachments: # <u>1</u> Affidavit of Todd G. Jones, # <u>2</u> Exhibit A, Declaration of Todd G. Jones, # <u>3</u> Exhibit B, Declaration of Todd G. Jones, # <u>4</u> Exhibit C, Declaration of Todd G. Jones, # <u>5</u> Exhibit D, Declaration of Todd G. Jones, # <u>6</u> Exhibit E, Declaration of Todd G. Jones, # <u>7</u> Affidavit of Laura L. Myers, # <u>8</u> Exhibit 1, Declaration of Laura L. Myers, # <u>9</u> Exhibit 2, Declaration of Laura L. Myers, # <u>10</u> Exhibit 3, Declaration of |

| | | |
|---|---|---|
| | | Laura L. Myers, # <u>11</u> Exhibit 4, Declaration of Laura L. Myers, # <u>12</u> Exhibit 5, Declaration of Laura L. Myers, # <u>13</u> Exhibit 6, Declaration of Laura L. Myers, # <u>14</u> Exhibit 7, Declaration of Laura L. Myers, # <u>15</u> Exhibit 8, Declaration of Laura L. Myers, # <u>16</u> Exhibit 9, Declaration of Laura L. Myers, # <u>17</u> Exhibit 10, Declaration of Laura L. Myers, # <u>18</u> Exhibit 11, Declaration of Laura L. Myers, # <u>19</u> Affidavit of R. Scott Johnson, # <u>20</u> Exhibit A, Declaration of R. Scott Johnson, # <u>21</u> Exhibit B, Declaration of R. Scott Johnson, # <u>22</u> Exhibit C, Declaration of R. Scott Johnson)(Johnson, R.) (Entered: 08/02/2024) |
| 08/02/2024 | <u>31</u> | Corporate Disclosure/Statement of Interest by Drake University. (Conley, Joshua) (Entered: 08/02/2024) |
| 08/06/2024 | <u>32</u> | ORDER Drake University shall file any motion to disqualify by August 13, 2024. If no motion is filed by that date, the Clerk of Court will be directed to unseal the sealed filings. See Order for details. Signed by Chief Judge Stephanie M. Rose on 8/6/2024. (mne) (Entered: 08/06/2024) |
| 08/06/2024 | <u>33</u> | Unresisted MOTION to Set time to File Reply Brief in support of Motion for Preliminary Injunction by Drake University.Motions referred to Stephen B. Jackson, Jr. Responses due by 8/20/2024. (Attachments: # <u>1</u> Exhibit 1 – Notice of Electronic Filing (Dkt. 30))(Gilbertson, John) (Entered: 08/06/2024) |
| 08/06/2024 | 34 | TEXT ORDER granting <u>33</u> Plaintiff's Unopposed Motion to Set Time to File Reply Brief in Support of Plaintiff's Motion for Preliminary Injunction. Plaintiff has until August 9, 2024 to file its reply. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr. on 8/6/24. (jeb) (Entered: 08/06/2024) |
| 08/08/2024 | <u>35</u> | Corporate Disclosure/Statement of Interest by Des Moines Area Community College, Des Moines Area Community College Foundation. (Johnson, R.) (Entered: 08/08/2024) |
| 08/09/2024 | <u>36</u> | MOTION for Leave to File under Seal by Drake University.Motions referred to Stephen B. Jackson, Jr. Responses due by 8/23/2024. (Gilbertson, John) (Entered: 08/09/2024) |
| 08/09/2024 | 37 | TEXT ORDER denying <u>36</u> Motion for Leave to File Plaintiff's Reply Brief Under Seal. Within the motion plaintiff states it "does not believe its Reply brief contains confidential or otherwise protected information." It is further represented that defendant's counsel declined to consent to the motion "on the basis that the record does not contain confidential or protected information." Given those representations, there is no valid reason for filing the reply brief under seal. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr. on 8/9/2024. (jeb) (Entered: 08/09/2024) |
| 08/09/2024 | <u>38</u> | Unresisted MOTION to file overlength brief *Reply Brief in support of Motion for Preliminary Injunction* by Drake University.Motions referred to Stephen B. Jackson, Jr. Responses due by 8/23/2024. (Attachments: # <u>1</u> Brief in Support Reply Brief, # <u>2</u> Exhibit 121 – Declaration of John D. Gilbertson, # <u>3</u> Exhibit 122 – Merchandise, # <u>4</u> Exhibit 123 – Other Uses of "D", # <u>5</u> Exhibit 124 – DMACC YouTube, # <u>6</u> Exhibit 125 – DMACC Hat Label, # <u>7</u> Exhibit 126 – Kansas City Royals, # <u>8</u> Exhibit 127 – Dordt Reg. No. 5,972,248, # <u>9</u> Exhibit 128 – Dordt Rebrand, # <u>10</u> Exhibit 129 – Academic D)(Gilbertson, John) (Entered: 08/09/2024) |
| 08/12/2024 | 39 | TEXT ORDER granting <u>38</u> Plaintiff's Unopposed Motion for Leave to File Overlength Reply Brief. Pursuant to Local Rule 7(h), the Clerk of Court is directed to detach and docket the reply brief and exhibits attached to the motion. Signed by Chief Magistrate |

| 08/13/2024 | | Judge Stephen B. Jackson, Jr. on 8/12/2024. (jeb) (Entered: 08/12/2024) |
|---|---|---|
| 08/13/2024 | 40 | REPLY BRIEF by Drake University re 4 MOTION for Preliminary Injunction . (Attachments: # 1 Exhibit 121, # 2 Exhibit 122, # 3 Exhibit 123, # 4 Exhibit 124, # 5 Exhibit 125, # 6 Exhibit 126, # 7 Exhibit 127, # 8 Exhibit 128, # 9 Exhibit 129) (btg) (Entered: 08/13/2024) |
| 08/13/2024 | 41 | MOTION to Disqualify Counsel by Drake University.Motions referred to Stephen B. Jackson, Jr. Responses due by 8/27/2024. (Attachments: # 1 Brief in Support, # 2 Exhibit 1 – MVS Website, # 3 Exhibit 2 – RSJ Packet, # 4 Exhibit 3 – FL Press, # 5 Exhibit 4 – LinkedIn, # 6 Exhibit 5 – CLP, # 7 Exhibit 6 – FL IP Group, # 8 Exhibit 7 – Best Lawyer, # 9 Exhibit 8 – Best Lawyer TM, # 10 Exhibit 9 – TYS Packet, # 11 Exhibit 10 – MVS Drake, # 12 Exhibit 11 – Drake TMs, # 13 Exhibit 12 – 2014 Academic D, # 14 Exhibit 13 – 2018 Academic D, # 15 Exhibit 14 – RSJ MVS, # 16 Exhibit 15 – Signed Responses, # 17 Exhibit 16 – Recovcation, # 18 Exhibit 17 – Appointed Atty Filings, # 19 Exhibit 18 – RSJ FL, # 20 Exhibit 19 – Appointed Atty Filings, # 21 Exhibit 20 – Letters, # 22 Exhibit 21 – Martin Declaration, # 23 Exhibit 22 – ABA Making Threats, # 24 Exhibit 23 – Conley Declaration)(Conley, Joshua) (Entered: 08/13/2024) |
| 08/13/2024 | 42 | NOTICE of Appearance by Cara S. Donels on behalf of Des Moines Area Community College, Des Moines Area Community College Foundation (Donels, Cara) (Entered: 08/13/2024) |
| 08/13/2024 | 43 | NOTICE of Appearance by Erin Maureen Boggess on behalf of Des Moines Area Community College, Des Moines Area Community College Foundation (Boggess, Erin) (Entered: 08/13/2024) |
| 08/14/2024 | 44 | RESPONSE to Motion re 20 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Drake University. Replies due by 8/21/2024. (Attachments: # 1 Exhibit 1 – DMACCF SoS Record, # 2 Exhibit 2 – DMACC Org. Chart, # 3 Exhibit 3 – DMACC Bldg 22 Map, # 4 Exhibit 4 – Scholarships, # 5 Exhibit 5 – Fundraising, # 6 Exhibit 6 – DMACCF Homepage, # 7 Exhibit 7 – DMACC Mag Website, # 8 Exhibit 8 – DMACC Mag Spring/Summer 2024, # 9 Exhibit 9 – Alumni Assoc. Webpage, # 10 Exhibit 10 – Bookstore, # 11 Exhibit 11 – Gilbertson Declaration)(Gilbertson, John) (Entered: 08/14/2024) |
| 08/20/2024 | 45 | TEXT ORDER Setting Hearing on Motion to Disqualify Counsel 41 . Motion Hearing is set for 9/3/2024 at 09:00 AM in Des Moines – Room 145 – 1st Floor South before Chief Judge Stephanie M. Rose. Signed by Chief Judge Stephanie M. Rose on 8/20/2024. (mkh) (Entered: 08/20/2024) |
| 08/20/2024 | 46 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Drake University. Responses due by 9/3/2024. (Attachments: # 1 Brief in Support, # 2 Exhibit 1 – Des Moines Register, # 3 Exhibit 2 – Iowa Capital Dispatch, # 4 Exhibit 3 – Gilbertson Declaration)(Gilbertson, John) (Entered: 08/20/2024) |
| 08/21/2024 | 47 | REPLY re 20 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Des Moines Area Community College Foundation.(Johnson, R.) (Entered: 08/21/2024) |
| 08/23/2024 | 48 | MOTION to Strike 21 Answer to Amended Complaint,,, Counterclaim,, by Drake University.Motions referred to Stephen B. Jackson, Jr. Responses due by 9/6/2024. (Attachments: # 1 Brief in Support, # 2 Exhibit 1 – Des Moines Register, # 3 Exhibit 2 – Gilbertson Declaration)(Gilbertson, John) (Entered: 08/23/2024) |

| 08/27/2024 | 49 | RESPONSE to Motion re 41 MOTION to Disqualify Counsel filed by Des Moines Area Community College, Des Moines Area Community College Foundation. Replies due by 9/3/2024. (Attachments: # 1 Declaration of R. Scott Johnson, # 2 Exhibit A, Declaration of R. Scott Johnson, # 3 Exhibit B, Declaration of R. Scott Johnson, # 4 Exhibit C, Declaration of R. Scott Johnson, # 5 Exhibit D, Declaration of R. Scott Johnson, # 6 Exhibit E, Declaration of R. Scott Johnson, # 7 Exhibit F, Declaration of R. Scott Johnson, # 8 Exhibit G, Declaration of R. Scott Johnson, # 9 Exhibit H, Declaration of R. Scott Johnson, # 10 Exhibit I, Declaration of R. Scott Johnson, # 11 Declaration of Tina Yin Sowatzke, # 12 Declaration of Cara S. Donels)(Donels, Cara) (Entered: 08/27/2024) |
|---|---|---|
| 09/03/2024 | 50 | REPLY re 41 MOTION to Disqualify Counsel filed by Drake University. (Attachments: # 1 Exhibit 24 – MVS Email, # 2 Exhibit 25 – TM Application, # 3 Exhibit 26 – TM Office Action Response, # 4 Exhibit 27 – Gilbertson Declaration)(Gilbertson, John) (Entered: 09/03/2024) |
| 09/03/2024 | 51 | Minute Entry for proceedings held before Chief Judge Stephanie M. Rose: Motion Hearing held on 9/3/2024 re 41 MOTION to Disqualify Counsel filed by Drake University. Order to follow. (Court Reporter Kelli Mulcahy.) (pll) (Entered: 09/03/2024) |
| 09/03/2024 | 52 | *AMENDED* ANSWER to 17 Amended Complaint , Amended COUNTERCLAIM against Drake University by Des Moines Area Community College. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U)(Johnson, R.) (Entered: 09/03/2024) |
| 09/03/2024 | 53 | RESPONSE to Motion re 46 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Resistance to Plaintiff's Motion to Dismiss Counterclaim Plaintiff's Third and Fourth Claims* filed by Des Moines Area Community College, Des Moines Area Community College Foundation. Replies due by 9/10/2024.(Johnson, R.) (Entered: 09/03/2024) |
| 09/04/2024 | 54 | MOTION to Seal *Docket Entry 52 and Subparts* by Drake University.Motions referred to Stephen B. Jackson, Jr. Responses due by 9/18/2024. (Gilbertson, John) (Entered: 09/04/2024) |
| 09/04/2024 | 55 | TEXT ORDER temporarily and provisionally granting 54 Plaintiff's Motion to Seal Docket Entry 52 and Its Subparts (Expedited Relief Requested). For the same reasons as previously ordered at Docket No. 28, this motion is granted temporarily until a final determination is made after consideration of the matters which have been raised. Accordingly, the Clerk of Court is directed to place Docket No. 52 in its entirety under seal provisionally subject to further consideration and order of the Court. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr. on 9/4/2024. (jeb) (Entered: 09/04/2024) |
| 09/05/2024 | 56 | RESPONSE to Motion re 48 MOTION to Strike 21 Answer to Amended Complaint,,, Counterclaim,, filed by Des Moines Area Community College, Des Moines Area Community College Foundation. Replies due by 9/12/2024.(Johnson, R.) (Entered: 09/05/2024) |
| 09/09/2024 | 57 | ORDER denying 41 Plaintiff's Motion to Disqualify Counsel. See Order for details. The Clerk of Court is directed to unseal docket entries 20, 21, 23, and 52. Signed by |

| | | Chief Judge Stephanie M. Rose on 9/9/2024. (dk) (Entered: 09/09/2024) |
|---|---|---|
| 09/09/2024 | 58 | TEXT ORDER re 4 18 MOTION for Preliminary Injunction filed by Drake University. A Preliminary Injunction Hearing is set for 9/24/2024 at 09:00 AM in Des Moines – Room 145 – 1st Floor South before Chief Judge Stephanie M. Rose. Signed by Chief Judge Stephanie M. Rose on 9/9/2024. (pll) (Entered: 09/09/2024) |
| 09/10/2024 | 59 | ORDER denying 20 Defendants' Motion to Dismiss for Failure to State a Claim. Signed by Chief Judge Stephanie M. Rose on 9/10/2024. (dk) (Entered: 09/10/2024) |
| 09/10/2024 | 60 | Unresisted MOTION to file overlength brief *Reply Brief in support of Motion to Dismiss Counterclaim Plaintiffs' Third and Fourth Claims (Dkt. 46)* by Drake University.Motions referred to Stephen B. Jackson, Jr. Responses due by 9/24/2024. (Attachments: # 1 Brief in Support, # 2 Exhibit 4 – Emails, # 3 Exhibit 5 – Declaration)(Conley, Joshua) (Entered: 09/10/2024) |
| 09/11/2024 | 61 | TEXT ORDER granting 60 Plaintiff's Unopposed Motion for Leave to File Overlength Reply Brief. Pursuant to Local Rule 7(h), the Clerk of Court is directed to detach and docket the reply brief and exhibits attached to the motion. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr. on 9/11/2024. (jeb) (Entered: 09/11/2024) |
| 09/12/2024 | 62 | REPLY Brief re 46 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Drake University. (Attachments: # 1 Exhibit, # 2 Exhibit) (btg) (Entered: 09/12/2024) |
| 09/12/2024 | 63 | REPLY re 48 MOTION to Strike 21 Answer to Amended Complaint,,, Counterclaim,, filed by Drake University.(Gilbertson, John) (Entered: 09/12/2024) |
| 09/13/2024 | 64 | MOTION for Leave to File *a Sur−reply to Plaintiff's Motion to Dismiss Counterclaim Plaintiff's Third and Fourth Claims (Expedited Relief Requested)* by Des Moines Area Community College, Des Moines Area Community College Foundation.Motions referred to Stephen B. Jackson, Jr. Responses due by 9/27/2024. (Johnson, R.) (Entered: 09/13/2024) |
| 09/13/2024 | 65 | RESPONSE to Motion re 64 MOTION for Leave to File *a Sur−reply to Plaintiff's Motion to Dismiss Counterclaim Plaintiff's Third and Fourth Claims (Expedited Relief Requested)* filed by Drake University. Replies due by 9/20/2024. (Attachments: # 1 Exhibit 1 – Emails)(Gilbertson, John) (Entered: 09/13/2024) |
| 09/16/2024 | 66 | TEXT ORDER granting 64 Defendants' Motion for Leave to File a Sur−Reply. Defendants are granted leave to file a sur−reply up to five pages in length and has until September 18, 2024 to do so. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr. on 9/16/2024. (jeb) (Entered: 09/16/2024) |
| 09/18/2024 | 67 | REPLY *Defendant's/Counterclaim Plaintiff's Sur−reply to Plaintiff's/Counterclaim Defendant's Motion to Dismiss Counterclaim Plantiff's Third and Fourth Claims* re 46 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Des Moines Area Community College.(Johnson, R.) (Entered: 09/18/2024) |
| 09/19/2024 | 68 | MOTION Admit Drake's Live Mascot to the Preliminary Injunction Hearing by Drake University.Motions referred to Stephen B. Jackson, Jr. Responses due by 10/3/2024. (Gilbertson, John) (Entered: 09/19/2024) |
| 09/20/2024 | 69 | TEXT ORDER denying 68 Plaintiff's Motion to Admit Live Mascot. Plaintiff may present evidence to depict its mascot without the need for physical presence. Signed by Chief Judge Stephanie M. Rose on 9/20/2024. (dk) (Entered: 09/20/2024) |

| | | |
|---|---|---|
| 09/23/2024 | 70 | TEXT ORDER CANCELING HEARING: Due to a conflict in the Court's calendar, the Preliminary Injunction Hearing set for 9/24/2024 at 09:00 AM in Des Moines – Room 145 – 1st Floor South before Chief Judge Stephanie M. Rose is CONTINUED WITHOUT DATE and will be reset by future Order of the Court. Signed by Chief Judge Stephanie M. Rose on 9/23/2024. (mkh) (Entered: 09/23/2024) |
| 09/24/2024 | 71 | TEXT ORDER re 4 18 MOTION for Preliminary Injunction filed by Drake University. A Preliminary Injunction Hearing is RESET for 10/15/2024 at 09:00 AM in Des Moines – Room 145 – 1st Floor South before Chief Judge Stephanie M. Rose. Signed by Chief Judge Stephanie M. Rose on 9/24/2024. (pll) (Entered: 09/24/2024) |
| 09/24/2024 | 72 | ANSWER to 17 Amended Complaint , COUNTERCLAIM against Drake University by Des Moines Area Community College Foundation. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U)(Johnson, R.) (Entered: 09/24/2024) |
| 09/26/2024 | 73 | Errata re 72 Answer to Amended Complaint,,, Counterclaim,, filed by Des Moines Area Community College Foundation. (Attachments: # 1 Exhibit E, # 2 Exhibit F, # 3 Exhibit G, # 4 Exhibit H, # 5 Exhibit I, # 6 Exhibit J, # 7 Exhibit K, # 8 Exhibit L, # 9 Exhibit M, # 10 Exhibit N, # 11 Exhibit O, # 12 Exhibit P, # 13 Exhibit Q, # 14 Exhibit R, # 15 Exhibit S, # 16 Exhibit T, # 17 Exhibit U, # 18 Exhibit V, # 19 Exhibit W)(Johnson, R.) (Entered: 09/26/2024) |
| 09/27/2024 | 74 | AMENDED ANSWER to Complaint 17 Amended Complaint , COUNTERCLAIM against Drake University by R. Scott Johnson on behalf of Des Moines Area Community College Foundation. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W)(Johnson, R.) (Entered: 09/27/2024) |
| 10/07/2024 | 75 | PROPOSED SCHEDULING ORDER AND DISCOVERY PLAN . (Gilbertson, John) (Entered: 10/07/2024) |
| 10/08/2024 | 76 | TEXT ORDER SETTING SCHEDULING CONFERENCE: A Telephonic Scheduling Conference will be held October 16, 2024 at 10:30 a.m. before Chief Magistrate Judge Stephen B. Jackson, Jr. To join the conference, counsel shall call 866–590–5055 and utilize access code 8811585. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr. on 10/8/2024. (jeb) (Entered: 10/08/2024) |
| 10/09/2024 | 77 | TRANSCRIPT of Proceedings re 51 Motion Hearing held on September 3, 2024 before Judge Stephanie M. Rose. Court Reporter: Kelli Mulcahy, Telephone Number: (515)284–6219. Page No(s).: 1 – 38. Transcript may be viewed at court public terminal or purchased through Court Reporter before deadline for Release of Transcript Restriction. After that date it may be obtained through court reporter, Clerk's Office, or PACER. Redaction Request due 11/4/2024. Redacted Transcript Deadline set for 11/15/2024. Release of Transcript Restriction set for 1/10/2025. (kmm) (Entered: 10/09/2024) |
| 10/15/2024 | 78 | Minute Entry for proceedings held before Chief Judge Stephanie M. Rose: Motion Hearing held on 10/15/2024 re [4, 18] MOTION for Preliminary Injunction filed by Drake University. (Court Reporter Kelli Mulcahy.) (pll) (Entered: 10/15/2024) |

| 10/16/2024 | 79 | TEXT MINUTE ENTRY for proceedings held before Chief Magistrate Judge Stephen B. Jackson, Jr.: Telephonic Scheduling Conference held on 10/16/2024. Attorneys John Gilbertson & Joshua Conley appeared for plaintiff. Attorneys Erin Boggess & Scott Johnson appeared for defendant. Scheduling order to be entered. Court Time: 20 minutes. (jeb) (Entered: 10/16/2024) |
|---|---|---|
| 10/16/2024 | 80 | SCHEDULING AND TRIAL SETTING ORDER. Initial Disclosures to be completed by 11/21/2024. Motions to Add Parties due by 12/9/2024. Motions to Amend Pleadings due by 12/9/2024. Expert Witness Disclosures due 6/9/2025, 8/8/2025 and 10/9/2025. Discovery Deadline 12/1/2025. Dispositive Motion Deadline 1/9/2026. Final Pretrial Conference set for 5/14/2026 11:00 a.m. in Des Moines Courthouse before Chief Magistrate Judge Stephen B. Jackson, Jr. Jury Trial set to begin 6/8/2026 9:00 a.m. in Des Moines Courthouse before Chief Judge Stephanie M. Rose. Estimated length 5 days. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr. on 10/16/2024. (jeb) (Entered: 10/16/2024) |
| 10/16/2024 | 81 | ORDER REGARDING FINAL PRETRIAL CONFERENCE REQUIREMENTS. See order for deadlines. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr. on 10/16/2024. (Attachments: # 1 Final Pretrial Order Form) (jeb) (Entered: 10/16/2024) |
| 10/18/2024 | 82 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Drake University. Responses due by 11/1/2024. (Attachments: # 1 Brief in Support)(Conley, Joshua) (Entered: 10/18/2024) |
| 11/01/2024 | 83 | RESPONSE to Motion re 82 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Resistance to Motion to Dismiss Des Moines Area Community College Foundation's Third Claim for Defamation* filed by Des Moines Area Community College Foundation. Replies due by 11/8/2024.(Johnson, R.) (Entered: 11/01/2024) |
| 11/05/2024 | 84 | REPLY re 82 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Drake University.(Conley, Joshua) (Entered: 11/05/2024) |
| 11/05/2024 | 85 | Unresisted MOTION to file overlength brief by Drake University.Motions referred to Stephen B. Jackson, Jr. Responses due by 11/19/2024. (Attachments: # 1 Exhibit Reply Brief)(Gilbertson, John) (Entered: 11/05/2024) |
| 11/05/2024 | 86 | TEXT ORDER granting 85 Plaintiff's Motion for Leave to File Overlength Reply Brief. The reply brief filed at Dkt. No. 84 is allowed. Signed by Chief Magistrate Judge Stephen B. Jackson, Jr. on 11/5/2024. (jeb) (Entered: 11/05/2024) |
| 11/22/2024 | 87 | ORDER granting 18 Plaintiff's Motion for Preliminary Injunction. See Order for details. Signed by Chief Judge Stephanie M. Rose on 11/22/2024. (dk) (Entered: 11/22/2024) |
| 11/25/2024 | 88 | ORDER regarding Rule 65(c) Bond. Plaintiff may provide security by posting a surety bond or cash bond. See Order for details. Signed by Chief Judge Stephanie M. Rose on 11/25/2024. (mne) (Entered: 11/25/2024) |
| 11/26/2024 | 89 | Check BOND in the amount of $ 25,000 posted by Drake University. Receipt #27736 (btg) (Entered: 11/26/2024) |
| 11/27/2024 | 90 | NOTICE OF INTERLOCUTORY APPEAL as to 87 Order on Motion for Preliminary Injunction by Des Moines Area Community College, Des Moines Area Community College Foundation. Filing fee $ 605, receipt number AIASDC−5611913. (Attachments: # 1 Supplement to Notice of Appeal)(Johnson, R.) (Entered: 11/27/2024) |

| 12/03/2024 | 91 | NOTIFICATION OF APPEAL and NOA Supplement by District Court Clerk to USCA re 90 Notice of Interlocutory Appeal, filed on 11/27/2024. (vr) (Entered: 12/03/2024) |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| DRAKE UNIVERSITY, | ) | Case No. 4:24-cv-00227-SMR-SBJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER ON MOTION FOR |
| DES MOINES AREA COMMUNITY | ) | PRELIMINARY INJUNCTION |
| COLLEGE FOUNDATION and DES | ) | |
| MOINES AREA COMMUNITY | ) | |
| COLLEGE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| DES MOINES AREA COMMUNITY | ) | |
| COLLEGE, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DRAKE UNIVERSITY, | ) | |
| | ) | |
| Counterdefendant. | ) | |

Plaintiff Drake University ("Drake") is suing Defendant Des Moines Area Community College ("DMACC") as well as Defendant Des Moines Area Community College Foundation ("DMACCF") for trademark infringement stemming from the adoption of a new school logo featuring a blue and white block letter "D" by DMACC.[1]  Drake seeks a preliminary injunction prohibiting DMACC from using a "standalone 'D'" and the colors blue and white to market or represent DMACC's "educational services, athletics, and ancillary goods and services."  Drake

---

[1] For clarity, Defendants will be referred to collectively as DMACC.

1

requests injunctive relief based upon Lanham Act claims as well as several of its state law claims. The contested marks are displayed in Figure 1 below.



Figure 1 [ECF No. 1 ¶ 222]

## I.    BACKGROUND

### A.  Procedural Background

On July 8, 2024, Drake filed this case against DMACCF alleging trademark infringement and requesting a preliminary injunction.  [ECF Nos. 1, 4].  Shortly thereafter, Drake amended its Complaint and Motion for Preliminary Injunction, adding Des Moines Area Community College as a Defendant. [ECF Nos. 17, 18].   This case has already been extensively litigated since its inception in July.  Indeed, the Court has already held two hearings, including the injunction hearing, and ruled on eight ancillary motions.  Given the docket contains 86 filings, the Court will not detail each and every contested matter that has arisen in the case.  However, there are several motions, some of which are still pending, that warrant mention to frame the preliminary issues in the case.

At the outset of the case, Drake sought to disqualify counsel for DMACC.  The motion to disqualify was denied after a hearing on the matter.  [ECF No. 57].  Meanwhile, DMACCF requested dismissal from the case, arguing that it was an improper party, which the Court also

-2-

denied.  [ECF Nos 20, 59].  Subsequently, both DMACC and DMACCF have answered and filed counterclaims against Drake.[2]  [ECF Nos. 52, 74].    Drake seeks dismissal of the defamation counterclaim as to both Defendants.  [ECF Nos. 46, 82].  Also pending is Drake's motion to strike portions of DMACC's answer and counterclaims.   [ECF No. 48].

Drake requested expedited relief and a hearing on its amended motion for preliminary injunction.  [ECF No. 18-1]; *see also* LR 7(c), (i) (setting forth the procedure for oral argument and expedited relief under the Local Rules).  After resolving the preliminary disputes detailed above, the Court held an injunction hearing on October 15, 2024, where both parties presented some evidence and argued their positions on the motion.   The Court has fully reviewed the presentations, exhibits, and arguments of both parties in the record.

### B.  Factual Background

Drake University is a private, four-year university located in Des Moines, Iowa.  It has offered its educational services since its founding in 1881.  Drake asserts trademark rights in three different logos depicting the letter D.  These logos have been designated as: (1) the Vintage D; (2) the Academic D; and (3) the Athletic D, respectively featured in Figures 2–4.





Figure 2 [Excerpt from ECF No. 1 ¶ 30]     Figure 3 [ECF No. 1 ¶ 61]     Figure 4 [ECF No. 1 ¶ 67]

---

[2] DMACC requests a declaration of non-infringement and invalidation of Drake's asserted mark.  DMACCF also alleges that Drake has defamed the organization.

Although Drake has registered trademarks for its Academic D and Athletic D, the Vintage D is not a registered mark with the United States Patent and Trademark Office ("USPTO"). However, Drake has registered the Marching Spike trademark shown in Figure 5 below. The Vintage D is depicted on Spike's sweatshirt. The Marching Spike trademark has been registered since 1989. Drake contends that it has used the Vintage D since at least 1906 and has used the color scheme as reflected in Figure 6 since 2016.





| Figure 5 [ECF No. 1 ¶ 157] | Figure 6 [ECF No. 1 ¶ 213] |

DMACC is a community college that primarily offers two-year degrees in central Iowa and the Des Moines area. DMACC opened in 1966. Last October, DMACC undertook a rebranding campaign where it transitioned from the logo in Figure 7 to the one in Figure 9. The school also changed its color scheme from the orange and navy colors in Figure 8 to the two shades of blue depicted in Figure 6. DMACC then began rolling out new advertisements and merchandise using its new logo—the blue and white block style D.

-4-

  

| Figure 7 [ECF No. 1 ¶ 132] | Figure 8 [ECF No. 1 ¶ 135] |



Figure 9 [Excerpt from ECF No. 1-88]

Drake argues that DMACC's new logo infringes on its registered trademark rights as well as its common law trademark rights grounded in its Vintage D, as is depicted in Figures 1, 2, and 5. After months of unfruitful prelitigation discussions between the schools about DMACC's new look, Drake filed suit against DMACC in July, bringing claims of federal trademark infringement and unfair competition, their state-law corollaries, dilution, and unjust enrichment. Drake argues that it is likely to succeed on the merits of its claims and seeks an injunction enjoining DMACC from using its new logo.

Appellate Case: 24-3445    Page: 19    Date Filed: 12/04/2024 Entry ID: December 3 2024 p19

## II. DISCUSSION

### A. *Preliminary Injunction Standard*

A preliminary injunction is an extraordinary remedy that is not issued routinely or "as a matter of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Munaf v. Green*, 553 U.S. 674, 689–90 (2008)). The main purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm until a case can be decided on the merits. *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984). "A plaintiff seeking a preliminary injunction bears the burden of showing that such extraordinary relief is warranted." *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023) (citation omitted). Due to the nature of trademarks, the Lanham Act expressly authorizes a preliminary injunction as available relief for trademark infringement, irrespective of whether the mark is registered. 15 U.S.C. § 1116(a).

At this early stage of the case, the Court weighs four factors in determining whether to issue a preliminary injunction: (1) Drake's probability or likelihood of success on the merits of the claim; (2) the threat of irreparable harm or injury to Drake absent preliminary relief; (3) the balance of equities, weighing the harm suffered by Drake against the harm to DMACC that would result from issuing an injunction; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

Although no individual factor is dispositive, the Eighth Circuit has held that probability of success "is the most significant." *Sleep Number Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (citation omitted). If a party seeks to enjoin the enforcement of a duly enacted statute, they must show that they are "likely to prevail on the merits" on the claims. *Eggers v. Evnen*, 48 F.4th 561, 565 (8th Cir. 2022) (citation omitted). However, where the challenge is to a private action, the United States Court of Appeals for the Eighth Circuit applies a "fair chance of prevailing"

-6-

when considering the likelihood of success on a motion for preliminary injunction. *Sleep Number Corp.*, 33 F.4th at 1016 (noting that the higher "more-likely-than-not standard is reserved for injunctions against the enforcement of statutes and regulations, which are 'entitled to a higher degree of deference and should not be enjoined lightly.'") (quoting *Rodgers v. Bryant*, 942 F.3d 451, 455–56 (8th Cir. 2019)). A "fair chance of prevailing" only requires that a party establish its claims advance a "fair ground for litigation." *Id.* at 1017 (quoting *Watkins Inc. v. Lewis,* 346 F.3d 841, 844 (8th Cir. 2003)).

A plaintiff is not required to establish with absolute certainty that irreparable harm will occur, but it must show that "irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis omitted) (citation omitted). Failure to show irreparable harm is an "independently sufficient basis upon which to deny a preliminary injunction." *Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021) (citation omitted). When balancing the equities of a preliminary injunction, courts weigh "the threat of irreparable harm shown by the movant against the injury that granting the injunction will inflict on other parties litigant." *MPAY Inc. v. Erie Custom Comp. Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) (cleaned up) (citation omitted).

The Lanham Act directs that there is a rebuttable presumption of irreparable harm if a party establishes a likelihood of success on the merits of a claim for trademark infringement. 15 U.S.C. § 1116(a). A defendant may rebut this presumption by presenting evidence to negate irreparable harm such as evidence undermining the merits of the claim or showing delay by the plaintiff in seeking preliminary relief. *See Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir. 1999) (affirming the district court's determination that delay in objecting to the use of a mark "belies any claim of irreparable injury pending trial").

*B. Analysis*

1. Likelihood of Success on the Merits

The most significant consideration when determining if a preliminary injunction is appropriate is the movant's likelihood of success on the merits of its claim. *Laclede Gas Co. v. St. Charles Cnty. Mo*., 713 F.3d 413, 419 (8th Cir. 2013) (citation omitted). Thus, "the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." *CDI Energy Servs., Inc. v. West River Pumps, Inc*., 567 F.3d 398, 402 (8th Cir. 2009). Drake seeks injunctive relief on its Lanham Act claims as well as on its unfair competition and dilution claims. [ECF No. 18].

a. Lanham Act Claims

i. Trademark Infringement and Unfair Competition Standard

Trademarks are protected under the Lanham Act against infringement by the "use of similar marks on similar or related products or services if such use creates a likelihood of confusion." *Select Comfort Corp. v. Baxter*, 996 F.3d 925, 932 (8th Cir. 2021) (citation omitted). The Lanham Act serves the core functions of protecting consumers from confusion, fostering market competition, and securing benefits to the creators of trademarks. *See* 15 U.S.C. § 1127 (declaring "[t]he intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce."); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc*., 469 U.S. 189, 198 (1985) (explaining that trademark law protects "the ability of consumers to distinguish among competing producers"); *Matal v. Tam*, 582 U.S. 218, 225 (2017) (noting that "trademarks foster competition and the maintenance of quality by securing to the producer the benefits of good reputation") (citation omitted). The Lanham Act effectuates

-8-

these goals by providing a cause of action against persons who unjustly benefit off the goodwill of another's existing trademark.  15 U.S.C. § 1127.

The Lanham Act protects against infringement of common law trademarks in addition to registered trademarks.  *Matal*, 582 U.S. at 225 ("[I]t is common ground that § 43(a) protects qualifying unregistered trademarks.") (citation omitted); *Lovely Skin, Inc. v. Ishta Skin Care Prods., LLC*, 745 F.3d 877, 887 n.4 (8th Cir. 2014) ("Whether a mark is federally registered does not bear on a mark's strength or affect the likelihood of confusion analysis.") (citing *M2 Software Inc. v. M2 Commc'ns, L.L.C.*, 76 Fed. App'x 123, 124 (9th Cir. 2003); *see also S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 665 (7th Cir. 2016) ("It is a bedrock principle of trademark law that trademark ownership is not acquired by federal or state registration, but rather from prior appropriation and actual use in the market.") (cleaned up) (citation omitted).

As detailed above, Drake has registered trademarks in its Academic D and Athletic D but not its Vintage D.  Although Drake's registered marks are presumptive in use due to their registered status, there is no likelihood of confusion between DMACC's new logo and those registered marks.  *S.C. Johnson & Son*, 835 F.3d at 666 (observing that registration of a trademark "establishes only a rebuttable presumption of use as of the filing date").  They simply are not similar enough to one another to cause confusion to the public.  *See* 15 U.S.C. § 1114 (prohibiting the use of a registered mark where the use "is likely to cause confusion, or to cause mistake, or to deceive" regarding the source of the goods or services).

An examination of the marks as a whole reveals distinguishing and distinct characteristics which eviscerate a finding of likelihood of confusion, such as the unique stylization of the Academic D and the bulldog emblem attached to the Athletic D.  *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980) (setting forth the factors guiding the likelihood of confusion

analysis).  Therefore, the main issue in the case is whether Drake has a valid common law trademark for its Vintage D and whether DMACC's new logo infringes on that mark.  *See* 15 U.S.C. § 1125.

ii.    Validity of Trademark

A common law trademark "arises from the adoption and actual use of a word, phrase, logo, or other device to identify goods or services with a particular party." *First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044 (8th Cir. 1996).  The owner of a valid common law trademark has exclusive rights to the mark within a certain geographical area.  *Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co.*, 578 F.2d 727, 730 (8th Cir. 1978).

To establish trademark infringement, Drake must show that it uses its Vintage D in connection with goods and services within a relevant geographic area and the mark identifies the university as the provider of the services.  *First Bank*, 84 F.3d at 1044.  Furthermore, a successful trademark infringement claim must show that DMACC's use of its protected mark "creates a likelihood of confusion, deception, or mistake on the part of an appreciable number of ordinary" consumers.  *General Mills, Inc. v. Kellogg Co*., 824 F.2d 622, 626 (8th Cir. 1987).

The key to the protectability of an unregistered mark is "whether the mark is 'capable of distinguishing the applicant's goods from those of others.'" *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co*., 550 F.3d 465, 475 (5th Cir. 2008) (citation omitted).  Distinctiveness is a condition precedent for a mark to be protectable.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).  Trademark distinctiveness falls into one of four categories: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful.  *Cellular Sales, Inc. v. Mackay*, 942 F.2d 483, 485 (8th Cir. 1991) (citation omitted).

-10-

On one end of the distinctiveness spectrum, a generic term is not entitled to protection because they are within the public domain and available for use by all. *Insty*Bit, Inc. v. Poly-Tech Indus., Inc.*, 95 F.3d 663, 672 n.13 (8th Cir. 1996) (describing a generic mark as "refer[ing] to the genus of which the particular product is a species") (quoting *Two Pesos*, 505 U.S. at 768). Generic marks are common descriptive names for a good or service. *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1325 (8th Cir. 1984) (defining "generic" as a term that refers to "'a particular genus or class of which an individual article or service is but a member'") (quoting *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir. 1980)). For instance, "ivory" may be a generic term if used to describe products made out of elephant tusks. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 n.6 (2d Cir. 1976) (noting that "ivory" would be an "arbitrary" if applied to a soap product). Other common examples of generic marks are "thermos," "cellophane," and "aspirin." *See King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 321 F.2d 577, 580 (2d Cir. 1963); *DuPont Cellophane Co. v. Waxed Prods. Co.*, 85 F.2d 75, 82 (2d Cir. 1936); *Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (S.D. N.Y. 1921). Thermos became a generic term because consumers use of that term became synonymous with vacuum bottles. *King-Seeley Thermos*, 321 F.2d at 579 (concluding that "only a small minority of the public knows that [Thermos] has trademark significance"). Likewise, cellophane was once categorized as suggestive, but became genericized after the term was regularly used as a common description for cellulose film. *DuPont Cellophane*, 85 F.2d at 82 (holding that "cellophane" holds a definition beyond the goods of the mark holder). Aspirin has also become a generic term for pain relieving pharmaceuticals. *Bayer Co.*, 272 F. at 509 (holding that "aspirin" based on what "buyers understand" by the term).

On the opposite end of the spectrum are marks that are arbitrary or fanciful, which receive the strongest protection against infringement. *Cellular Sales,* 942 F.2d at 486. An arbitrary mark

uses a common word to describe a product in a unique manner, whereas a fanciful mark is created for the sole purpose of a trademark. *Duluth News-Tribune v. Mesabi Publ'n Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996). Well-known examples of "arbitrary" trademarks include Nike and the Nike "swoosh" symbol, "Kodak," and "Camel" cigarettes. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209–11 (2000) (citations omitted). Although "Nike" refers to the Greek goddess of victory, which is a common word in a way, courts have held that it is arbitrary when applied to shoes and clothing brands. *Samara Bros.*, 529 U.S. at 210. The Nike swoosh symbol is fanciful because it was invented solely for trademark use and is otherwise unrelated to the product. *Id*. "Kodak" is also fanciful because the term was created for use as a trademark. *Id*. "Camel" is arbitrary because although it is a common word, its use in cigarette products is unfamiliar. *Id*.

Marks that are suggestive and descriptive "fall somewhere in between" arbitrary or fanciful marks and generic marks. *Duluth News-Trib.,* 84 F.3d at 1096. A suggestive mark reflects "imagination, thought, and perception to reach a conclusion as to the nature of the goods." *Frosty Treats, Inc. v. Sony Comput. Ent. Am. Inc.*, 426 F.3d 1001, 1005 (8th Cir. 2005); *Shell Oil*, 617 F.2d at 1184 (describing a suggestive mark as one that "suggests rather than describes, some characteristic of the goods [or service] to which it is applied") (cleaned up) (citation omitted). These marks do not require a secondary meaning to receive protection. *Frosty Treats*, 426 F.3d at 1005. An example of a suggestive mark is "Tide" laundry detergent. *Samara Bros.*, 529 U.S. at 210–11.

A descriptive mark is the "weakest protectable mark." *Lovely Skin, Inc.*, 745 F.3d at 888 (citation omitted). It conveys the "immediate idea of the ingredients, qualities or characteristics of the goods" but requires a secondary meaning to be protectable. *Frosty Treats*, 426 F.3d at 1005 (citations omitted).

Appellate Case: 24-3445    Page: 26    Date Filed: 12/04/2024 Entry ID: December 3 2024 p26

Secondary meaning within trademark law is when there "is an association formed in the minds of the consumers between the mark and the source or origin of the product." *Co-Rect Prods., Inc. v. Marvy! Advert. Photography, Inc.*, 780 F.2d 1324, 1330 (8th Cir. 1985). Familiar examples of descriptive marks include "Park 'N Fly" when used in relation to parking lots near an airport, "PM" in relation to pain relievers with sleep-aid chemicals, and "Polaroid" for a type of photography product. *Park 'N Fly, Inc.*, 469 U.S. at 198–99; *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir. 1992) (concluding that "PM" is descriptive); *Marks v. Polaroid Corp.*, 129 F. Supp. 243, 270 (D. Mass 1955) (suggesting that "Polaroid" may be descriptive because it was not generic at that time).

Colors are "recognized as a 'symbol' or 'device' that can be protected as a trademark." *Weems Indus., Inc. v. Teknor Apex Co.,* 540 F. Supp. 3d 839, 850 (N.D. Iowa 2021) (citation omitted). Much like descriptive marks, colors must take on a secondary meaning in order to be protectible. *Qualitex Co. v. Jacobson Prods. Co. Inc.*, 514 U.S. 159, 163–64 (1995) (holding that use of color alone as a trademark is consistent with the "basic objectives of trademark law"). Colors can become distinctive if it is shown that "over time, customers [have] come to treat a particular color on a product or its packaging . . . as signifying a brand." *Id*. at 163.

Secondary meaning can be established through direct evidence like consumer testimony or surveys, but circumstantial evidence can also be probative. *Frosty Treats,* 426 F.3d at 1005 (citation omitted). Circumstantial evidence that supports a secondary meaning can include the "exclusivity, length and manner of use of the mark; the amount and manner of advertising; the amount of sales and number of customers; the plaintiff's established place in the market; and the existence of intentional copying[.]" *Id*. Additionally, evidence of actual confusion can support a

-13-

claim of secondary meaning of a mark. *Am. Ass'n for Just. v. The Am. Trial Laws. Ass'n*, 698 F. Supp. 2d 1129, 1143 (D. Minn. 2010) (citation omitted).

Drake seeks injunctive relief for both its blue and white color scheme, as well as the use of a stand-alone D. Therefore, it must demonstrate an adequate level of distinctiveness for each of those marks to justify protection. The parties contest the level of distinctiveness of Drake's marks. Drake asserts that its brand, including a stand-alone "D", is arbitrary and therefore inherently distinctive. Meanwhile, DMACC asserts that Drake's "D" is suggestive at best. Additionally, DMACC argues that Drake has not established that its colors have a secondary meaning such that they would be protectable.

### 1. Stand-alone "D"

Drake submitted substantial evidence demonstrating its use of the Vintage D, dating back to the early 1900s. *See* [ECF No. 18-1]. DMACC asserts that this identified use is "ancient" and urges the Court to disregard it because if Drake does not have any evidence of present use of the mark, it has clearly been abandoned. However, Drake's use of the mark going back a century is relevant in determining if the mark identifies Drake as the provider of goods or services in the area.

Drake has used the Vintage D for decades to denote its university and the services it provides. It has provided several examples of the mark on artwork and yearbook covers, uniforms, apparel and merchandise, and in modern marketing—mostly importantly in connection with its live mascot and his letterman jacket. [ECF Nos. 1-3–1-21, 1-35–1-65]. The demonstrated long-term use of the Vintage D supports Drake's argument that it is a valid trademark which denotes its services within the geographic region.

-14-

The Court would agree that the Vintage D as a trademark is suggestive. The letter suggests the name for which it stands—D for Drake. It is also in a commonly used collegiate font—indicating the educational services Drake provides. As such, it is inherently distinctive and entitled to protection. However, even if it were considered descriptive, the mark has taken on a secondary meaning to denote Drake University, specifically in the blue and white color scheme. No evidence has been presented that any other school or company in the Des Moines area has used a blue and white block-style D over the last one hundred years. This extensive and exclusive use of the mark is convincing evidence of secondary meaning on its own. *See Marshalltown Trowel Co. v. Walton Tool Co*., No. 4-98-90565, 2000 WL 33361990, at *4 (S.D. Iowa Dec. 15, 2000) (explaining that "[e]xclusivity and longevity go a long way to proving a product has acquired a secondary meaning in the eyes of consumers."). However, when paired with the use of the mark in marketing, including merchandise, awards, the basketball court, and Drake's live mascot, its secondary meaning is clear.

### 2. Drake Colors

DMACC points out that Drake did not submit any direct evidence to establish the secondary meaning of its colors, such as consumer testimony and surveys. However, secondary meaning for colors can be proven through circumstantial evidence in the same way circumstantial evidence can establish a descriptive mark. *Pocket Plus, L.L.C. v. Runner's High, LLC*, 2021 WL 5048197, at *5 (N.D. Iowa Oct. 12, 2021) (noting that in the absence of direct evidence "a court may infer secondary meaning from indirect evidence") (citing *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 871 (8th Cir. 1994)).

Drake asserts it has been using its color scheme of dark blue, light blue, and white consistently since 2016. [ECF No. 18-1 at 10]. Although Drake did not provide evidence

regarding the amount spent on advertising or the number of sales associated with the colors, it did produce significant examples of the colors in its marketing and advertisement materials. This included use of the colors on its website, its admissions materials, the "Griffmobile" (a vehicle used to transport the live bulldog mascot), and its sports facilities. [ECF Nos. 1-66–1-70]. Notably, Drake submitted a photo of a graphic t-shirt, sold by well-known local apparel store RAYGUN, featuring one of Drake's logos and the phrase "Des Moines Looks Great in Blue." [ECF No. 1-71]. Through this evidence, Drake has established nearly a decade of widespread use of its colors. Even without direct statistics, it is clear that Drake has made a substantial investment incorporating the colors at the university. Additionally, there is evidence in the record, including counsel's statements at the injunction hearing, that indicates that DMACC specifically reviewed Drake's brand and style guide as they were rebranding. [ECF No. 1-97]. Drake's style guide prominently displays the Drake colors and states that the "primary color palette is made up of two shades of blue—Drake Blue and Light Blue. These hues are central to the Drake brand and should be prevalent in everything created for Drake." [ECF No. 23-7 at 13]. Given the nearly identical colors DMACC chose in its rebrand, it is difficult to see how this is not persuasive evidence of intentional copying.

That being said, the Court is not convinced that every use of these colors would violate Drake's trademark. Rather, the colors take on their secondary meaning when paired with some other Drake indicia. The United States Court of Appeals for the Fifth Circuit discussed a similar issue in *Smack Apparel Co.*

In that case, a t-shirt company was using the colors of several universities and other indicia of the universities, including phrases and references to their sports team in designs for their t-shirts. *Smack Apparel*, 550 F.3d at 472. The court noted that a "trademark may include any word, name,

-16-

or symbol '*or any combination thereof.*'"  *Id*. at 475–76 (emphasis in original).  And because trademarks may also include colors, there was "no reason to exclude color plus other identifying indicia from the realm of protectible marks provided the remaining requirements for protection are met." *Id*. at 476.  The court explained that the universities' use of their colors and indicia for over a hundred years, when considered with the extensive implementation of the colors on university materials, merchandise, in association with the sports teams, and in advertising adequately established a secondary meaning.  *Id*. at 476–77.  The court commented that its conclusion was "consistent with the importance generally placed on sports team logos and colors by the public." *Id*. at 477.  The panel went on to say that "[b]y associating the color and other indicia with the university, the fans perceive the university as the source or sponsor of the goods because they want to associate with that source."  *Id*. at 478.  Therefore, Drake's colors on their own may not be a protectable trademark, but when paired with some other symbol or indicia of the university, such as its Vintage D, they become protectable.

iii.    Use of Trademark in Commerce

A person may establish a protectable mark by demonstrating "actual use in the market." *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1053 (10th Cir. 2021) (quoting *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 354 (6th Cir. 1998)); *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999) (holding that a "party may acquire a protectable right in a trademark only through use of the mark in connection with its product.").  This means that a person "must show use of the mark as a service mark, which means use 'to identify and distinguish the services of one person . . . from the services of others and to indicate the source of the services, even if that source is unknown.'"  *Underwood*, 996 F.3d at 1053 (quoting 15 U.S.C. § 1127)).  Actual use in commerce requires "attempts to complete genuine

-17-

commercial transactions" rather than a mere intent "to reserve a mark for later use." *Id*. at 1053–54 (cleaned up) (quoting *Allard Enters.*, 146 F.3d at 359). Furthermore, the use must be "uninterrupted and continuous." *Specht v. Google Inc.*, 747 F.3d 929, 935 (7th Cir. 2014) (citing *Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1265 (5th Cir. 1975) ("[E]ven a single use in trade may sustain trademark rights if followed by continuous commercial utilization.")).

DMACC asserts that Drake does not actually use its Vintage D in commerce because it abandoned the mark nearly twenty years ago when it created its new logos. It contends that the modern uses of the Vintage D identified by Drake during this case—on the basketball court, its use in an alumni group's award, and its display on the sweaters of a broadcaster for Drake's basketball games—do not constitute use in commerce. Further, DMACC points out that the only evidence of merchandise utilizing the mark by itself presented by Drake are two undated photos of a t-shirt and a sweatshirt.

The Court recognizes the issue with Drake's reliance on the sale of merchandise through undated photographs. However, even if those uses are not considered, Drake has adequately established that it uses the mark in commerce.

>"[A] mark shall be deemed to be in use in commerce—
>
>**(1)** on goods when—
>
>>**(A)** it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto . . . and
>>
>>**(B)** the goods are sold or transported in commerce, and
>
>**(2)** on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce."

15 U.S.C. § 1127.  Either use described in the statute would constitute "use in commerce," conferring a protectable interest in the unregistered mark.  *See Underwood*, 996 F.3d at 1053 (explaining that use in commerce is a requirement for establishing a protectable interest in an unregistered mark).

Drake's use of the mark identified in the records are clear uses in advertising its services to the public.  The Vintage D is used as part of the "National D Club" which is an alumni group comprised of Drake's athletic letter winners who continue to support Drake athletics.  [ECF No. 1-20]. The same alumni group presents the "Double D Award" honoring members of the group for their achievements since graduation.

Drake has also submitted numerous photographs of Michael Admire, who is the Director of Broadcasting for Drake.  In these photos, Admire is shown wearing a sweater prominently displaying the Vintage D.  As part of his duties as a play-by-play radio broadcaster for Drake basketball games, Admire is frequently visible courtside of basketball games.

Perhaps most importantly, the Vintage D is used in conjunction with Drake's live mascot, an English bulldog named Griff.  Drake has used an English bulldog as its live mascot for over one hundred years. [ECF No. 1 ¶ 68].  Drake's current mascot is Griff II.  *Id*. ¶ 70.  Drake submitted numerous examples of Griff in his primary uniform—a blue and white letterman jacket which prominently displays the Vintage D.  *Id*. ¶¶ 70–75.  Griff has been featured wearing his letter jacket at sporting events, on television news programs, in books, and in a photograph on the side of his own transport vehicle.  *Id*. ¶¶ 74–80.  He is also featured in admissions and promotional materials for the school, almost always wearing some version of the Vintage D.  *Id*. ¶¶ 81, 106–107.  These are unquestionably uses of the Vintage D as part of advertising and marketing for the school.  Accordingly, Drake has shown "use in commerce in a way 'sufficiently public to identify or

distinguish the marked goods in an appropriate segment of the public mind.'"  *Soc. Techs. LLC v. Apple Inc.,* 4 F.4th 811, 817 (9th Cir. 2021) (citation omitted).

This contemporaneous use of the Vintage D undermines DMACC's final argument against protectability of the Vintage D.  The school asserts that Drake abandoned use of its Vintage D in 2005 when it rebranded.  "Because trademark rights derive from the use of a mark in commerce and not from mere registration of the mark, the owner of a mark will lose his exclusive rights if he fails actually to use it.  A mark is deemed to be thus 'abandoned' when 'its use has been discontinued with intent not to resume such use.'"  *Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 954–55 (7th Cir. 1992) (quoting 15 U.S.C. § 1127).  As detailed above, Drake continues to use the Vintage D in multiple different ways.[3]  The record reflects that Drake continues to actually and consistently use the Vintage D.  For the reasons discussed above, Drake has established a valid protectable common law trademark in its blue and white Vintage D.

### iv.    Likelihood of Confusion

The use of a protected mark is infringement under the Lanham Act if it creates "a likelihood of confusion, deception, or mistake on the part of an appreciable number of ordinary purchasers as to an association between [Drake] and [DMACC] due to their common use" of similar marks.  *Kellogg Co.*, 824 F.2d at 626.  Courts in the Eighth Circuit use a list of nonexclusive factors to determine the likelihood of consumer confusion.  *SquirtCo.*,628 F.2d at 1091.  These *SquirtCo.*

---

[3] Perhaps the most prominent single example of Drake's use of the Vintage D was by Aubrey Drake Graham, a famous musical artist and rapper who uses his middle name as his stage name.  When Drake (the rapper) was scheduled to perform a concert in Des Moines, Drake (the university) convinced him to wear a letter jacket identical to the one outfitted on Griff during his concert.  After the concert, Drake (the rapper) visited the campus of Drake (the university) to pose for pictures in the letter jacket.  One prominent picture of Drake (the rapper) shows him donning the letter jacket while posing atop a large sign for Drake University.  This picture was then posted to the social media accounts of Drake (the rapper).

factors are focused on the "core inquiry" of "whether the relevant average consumers for a product or service are likely to be confused as to the source of a product or service or as to an affiliation between sources based on a defendant's use" of a protected mark. *Select Comfort Corp.*, 996 F.3d at 933 (citing *Anheuser-Busch, Inc. v. Balducci Publ'ns*, 28 F.3d 769, 774 (8th Cir. 1994)). It is not enough to show a possibility of confusion, there must be a probability of confusion. *Lovely Skin,* 745 F.3d at 887. The relevant factors when considering the likelihood of confusion include:

> (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to 'pass off' its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its costs and conditions of purchase.

*Id*. at 887 (citing *SquirtCo*., 628 F.2d at 1091). "[N]o one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." *Kemp v. Bumble Bee Seafoods, Inc*., 398 F.3d 1049, 1053 (8th Cir. 2005) (citing *SquirtCo.*, 628 F.2d 1091); *First Nat'l Bank in Sioux Falls v. First Nat'l Bank, South Dakota*, 153 F.3d 885, 888 (8th Cir. 1998) ("The relative weight of the factors depends on the facts of the individual case."). Not only are the *SquirtCo*. factors assigned different weight depending on the circumstances of the case, they will often overlap with each other. *Bumble Bee Seafoods,* 398 F.3d at 1054 (acknowledging that "the factors are not entirely separable"). The likelihood of confusion is a question of fact. *Mut. of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 399 (8th Cir. 1987) (citations omitted).

## 1. Strength of Mark

"When examining the likelihood of consumer confusion, 'a strong and distinctive' mark is 'entitled to greater protection than a weak or commonplace one.'" *H&R Block,* 58 F.4th at 947 (quoting *SquirtCo.*, 628 F.2d 1091). The strength of a mark is assessed conceptually and

commercially.  *Lovely Skin,* 745 F.3d at 888; *see also Aveda Corp. v. Evita Mktg., Inc.*, 706 F. Supp. 1419, 1428 (D. Minn. 1989) ("Generally, the strength of a mark depends on two factors— the distinctiveness of the mark and the extent to which the mark is recognized by the relevant consumer class.") (citation omitted).

a) Conceptual Strength

The conceptual strength of a mark is determined by its distinctiveness.  As previously discussed, the Vintage D is suggestive or, at a minimum, descriptive.  Therefore, although the mark is protectible, it is not entitled to the highest level of protection.  Rather, its strength falls "somewhere in between" the ends of the spectrum.  *Duluth News-Trib.,* 84 F.3d at 1096.  DMACC asserts that Drake's registered trademarks are weak because of third-party uses of similar marks.[4] Third-party use of "similar marks on similar goods is admissible and relevant to the strength of a mark."  *Kellogg Co.,* 824 F.2d at 626.

The Court first considers the fact that multiple colleges and universities use similar marks to denote their services and notes that these uses could weaken the conceptual strength of Drake's mark.  However, "the key is whether the third-party use diminishes in the public's mind the association of the mark with the plaintiff."  *Smack Apparel*, 550 F.3d at 479.  The examples identified by DMACC such as Dowling Catholic,[5] Duke, or Dartmouth are distinguishable from its own use of the similar symbol.

---

[4] DMACC's argument on these grounds relates to Drake's registered marks.  However, the third-party use DMACC cites to are educational institutions using the letter "D" to denote their services.  As such, this argument applies equally to Drake's unregistered Vintage D.

[5] Dowling Catholic is a Catholic high school located in West Des Moines.  [ECF No. 23-21 ¶ 1].

-22-

Dowling's use of the block style D is not in the identifiable Drake colors, rather it appears in maroon.  Additionally, it represents a high school, not a higher education institution.  As such, this use does not diminish the public's association of the blue and white Vintage D with Drake. Whereas Duke, although using the same colors for a stand-alone D, has a unique stylization of the D.  Duke is also located far from Drake's campus in Des Moines.  Dartmouth uses a green block-style D that is materially different than Drake, and is also not located anywhere near Drake University.  Given these obvious differences, the use of similar symbols by these schools does not meaningfully diminish the strength of Drake's mark.

### b) Commercial Strength

The commercial strength of a mark "is based on the 'public recognition and renown' of the mark as shown by the amount of advertising, sales volume, features and reviews in publications, and survey evidence." *Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, 103 F. Supp. 3d 1032, 1042 (D. Minn. 2015) (cleaned up).  Drake did not submit any evidence relating to advertising expenditures, sales volume, or consumer surveys to establish the commercial strength of its mark.  Instead, the school points the Court to the length of public use, including examples of advertisements using its mark, and social media responses to DMACC's new logo.  As such, there is a noticeable lack of evidence in the record to establish the commercial strength of Drake's Vintage D.  Nevertheless, although advertising expenditures are evidence of commercial strength, the Eighth Circuit has observed that it "says little about 'minds of consumers,' which is the relevant unit of analysis for likelihood of confusion." *ZW USA, Inc., v. PWD Sys., LLC*, 889 F.3d 441, 446 (8th Cir. 2018) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004)).  The Court notes that a significant amount of Drake's advertising using the mark was

-23-

very public—including its display on the news, at the Drake (the rapper) concert, at Drake basketball games, and constantly on the side of the Griffmobile.

Drake argues that the comments of individuals on social media responding to DMACC's new brand is probative of the commercial strength of Drake's mark. Specifically, they submitted screenshots from Facebook where commentators expressed opinions and criticism of DMACC's new brand. [ECF Nos. 1-88, 1-89]. Several of the comments opine that DMACC's new logo looks similar to Drake. However, the Court is not persuaded of the reliability and probative value of this evidence in establishing the commercial strength of Drake's mark.

First, commercial strength should be measured in "the class of customers and potential customers of a product or service, and not the general public." *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1375 (Fed. Cir. 2005). Not only do Facebook comments by random individuals not necessarily represent Drake's customers or potential customers, but they are also the opinions of self-selected people who chose to weigh in on the topic. Given this inherent selection bias and anonymity of such comments, it is nearly impossible for the Court to assess the reliability and potential accuracy of this evidence. Members of the public associating DMACC's new logo to Drake before any litigation took place may be an example of "actual marketplace recognition" of Drake's mark, but given the precariousness of this evidence, the Court does not find it dependable and assigns it very little weight. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc*., 638 F.3d 1137, 1149 (9th Cir. 2011) (explaining that "[c]ommercial strength is based on 'actual marketplace recognition'") (citation omitted).

For these reasons, the strength of Drake's mark does not heavily favor either party. The bottom line is that Drake's Vintage D is distinct enough to merit some degree of protection. Furthermore, it is used in advertising and marketing in the Des Moines area such that it is

recognizable.  There are many examples of educational institutions using similar marks, but none of those uses are nearly as resemblant or close in proximity as DMACC's.  Therefore, those third-party uses do not erode the strength of Drake's mark to the extent that DMACC contends.  Overall, the Court finds this factor tips slightly in Drake's favor.

### 2.  Similarity of Mark

The similarity of a mark should be judged by "similarities of sight, sound, and meaning between two marks."  *Kellogg Co.*, 824 F.2d at 627.  Similarity should be examined to assess "the impression that each mark in its entirety is likely to have on a purchaser exercising the attention usually given by purchasers of such products."  *ZW USA,* 889 F.3d at 446 (citation omitted); *see also Calvin Klein Cosmetics Corp. v. Lenox Labs.*, 815 F.2d 500, 504 (8th Cir. 1984) (explaining that courts "must attempt to recreate the conditions in which buying decisions are made, and . . . what a reasonable purchaser in market conditions would do").  A mark need not be a carbon copy for a likelihood of confusion to exist.  *Iowa Paint Mfg. Co. v. Hirshfield's Paint Mfg., Inc.*, 296 F. Supp. 2d 983, 993 (S.D. Iowa 2003) ("[E]xact similitude of the two marks is not required for a finding of likelihood of confusion.").  "Where the products are closely related, less similarity of the trademarks is necessary to support a finding of infringement."  *SquirtCo.*, 628 F.2d at 1091 (citation omitted).  Furthermore, confusion is more likely where the dominant portions of the mark are the same.  *PSK, LLC v. Hicklin*, 757 F. Supp. 2d 836, 866 (N.D. Iowa 2010) (quoting *Iowa Paint Mfg. Co.*, 296 F. Supp. 2d at 994).

Importantly, "similar marks are not likely to be confused when used in conjunction with the clearly displayed name of the manufacturer."  *ZW USA,* 889 F.3d at 446 (cleaned up) (citation omitted); *see also* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:43 (5th ed. May 2024) (explaining that "[a] 'house mark' is a mark used on several different

-25-

goods or services which themselves use a particular 'product mark.'"). However, house marks do not always act to sufficiently distinguish between similar marks. *See Guthrie Healthcare Sys. v. ContextMedia, Inc.,* 826 F.3d 27, 39 (2d Cir. 2016). "Even if two marks are distinguishable, we ask whether, under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 454 (5th Cir. 2017) (quoting *Xtreme Lashes, LLC v. Xtended Beauty*, Inc., 576 F.3d 221, 228 (5th Cir. 2009)).

This issue breaks down into two separate inquiries in the present case. What is the degree of similarity when DMACC uses its new D alone? What is the degree of similarity when the new D is accompanied by its house mark or other indicia of the college? The answer to this first question has become exceedingly clear as the litigation in this case has progressed. DMACC has represented to the Court that it never intended to utilize the D without the DMACC house mark. However, Drake submitted a multitude of examples of DMACC doing just that. DMACC explained that these were the acts of a "third-party vendor" and not the conscious decision of the school. That being said, DMACC has never been able to offer an explanation as to why the standalone D was put on its basketball court. In a trademark infringement case, the Eighth Circuit approved of the district court's analysis as to the similarities of the mark where it properly focused "on the total effect conveyed by both marks." *Kellogg Co.*, 824 F.2d at 627. Although the district court had acknowledged the similarities between the marks, it compared "the respective color schemes, lettering styles, and [cereal] box designs" to determine that the marks were "different enough to avoid consumer confusion." *Id*.

In this case, applying the same approach yields the opposite conclusion. Comparing the two Ds by themselves, including their shapes and colors (sight); the fact that they are the same

-26-

letter (sound); and that they both denote higher educational services (meaning), the marks are virtually identical.  The similarity of the marks falls decidedly in Drake's favor as to this stand-alone use of DMACC's D.

This brings the analysis to the second question, whether DMACC's house mark diminishes or alleviates a likelihood of confusion.  In a 2016 case, the United States Court of Appeals for the Second Circuit, the panel considered a trademark infringement case with a distinctive logo which was being used by two companies involved in healthcare advertising.  *Guthrie Healthcare Sys.* 826 F.3d at 32–35.  The panel explained that:

> [g]iven the importance of the distinctive logo in both cases to the overall design, coupled with the similarity between the two companies' logos, the appearance of Defendant's company name alongside what appears to be Plaintiff's logo would be likely to suggest to one familiar with the [plaintiff's] trademark at least a mutually consenting or affiliated business relationship between [defendant] and [plaintiff].

*Id.* at 39.  The court held that—taken together—the similarity of the marks, the distinctiveness of the logos, and the similar area of commerce would cause the public familiar with plaintiff's mark to infer that defendant's message came from plaintiff or its affiliate.  *Id.*  In fact, the panel concluded that likelihood of confusion was not only likely, but was virtually unavoidable.  *Id.* Therefore, even the constant presence of the defendant's name next to the mark did not distinguish the two logos and the similarity factor "powerfully favored" the plaintiff.  *Id.*

Given the nature of the services that DMACC and Drake provide in the Des Moines area, this same concern is present here.  Even with DMACC's house mark present below its D, the marks are similar enough it could cause the public to believe that the institutions are connected or affiliated.  *See id.*; *see also Iowa Paint Mfg.*, 296 F. Supp. 2d at 994 (explaining that "even if a consumer attaches importance to the defendant's house mark, the consumer may believe the

plaintiff had licensed, approved, or otherwise authorized this use of the plaintiff's trademark."). Moreover, the dominant feature of DMACC's new logo is the block letter blue and white D above its house mark. The dominant features of the two marks, including their nearly identical colors, are remarkably similar despite the inclusion of "DMACC" in the logo. *See PSK, LLC*, 757 F. Supp. 2d at 866. It is the similarity of the services provided by the two schools in conjunction with the likeness of the prominent Ds which is particularly significant for this factor. *Id.* (noting that the emphasis on the same term used in the marks created a similarity particularly because the goods and services of the parties were "virtually the same.")

Ultimately, the Court must consider the similarity of the marks in the context and conditions under which consumers would encounter them in the marketplace. *Id.*; *see also Bumble Bee Seafoods,* 398 F.3d at 1054. This includes the considerations of a reasonable purchaser in the market and how carefully they would scrutinize the marks when they are singly presented. *PSK, LLC,* 757 F. Supp. 2d at 866; *see also Bumble Bee Seafoods,* 398 F.3d at 1054. There are some differences in the marks when they are compared side-by-side, including distinct outlining and shadows using variations of the colors as well as the DMACC house mark. Additionally, a consumer looking to purchase the services of either institution may subject the mark to increased scrutiny given the nature of higher education. But that would not alleviate a likelihood of confusion as to any possible association between the schools. The average consumer who encounters DMACC's mark on merchandise or advertisements in the market individually may very well be confused as to its connection or affiliation with Drake.

Overall, DMACC's house mark when used with its D reduces the similarity with Drake's Vintage D. It does not, however, completely negate a likelihood of confusion between the two marks. The discernible effect of this characteristic is "drowned out by the presence of and

-28-

emphasis on" the dominant feature—the nearly indistinguishable block style white and blue and D. *PSK, LLC,* 757 F. Supp. 2d at 866. As the marks are encountered by the public, they are very similar. This factor supports a finding of likelihood of confusion as to the "affiliation, connection, or association" between the schools and as to the "origin, sponsorship, or approval" by Drake of DMACC's services. This is the result regardless of whether DMACC displays only the stand-alone D or utilizes its full logo, including its house mark.

### 3. Degree of Competition

*SquirtCo.* next requires an assessment of the relationship between the products within the competitive marketplace. *Bumble Bee Seafoods,* 398 F.3d at 1056. Direct competition need not be established. *Id.* However, "[d]irect competition can increase the likelihood of consumer confusion." *H&R Block,* 58 F.4th at 948 (citation omitted). Likelihood of confusion is broadly interpreted for use of a "mark on any product or service which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." *Anheuser-Busch,* 28 F.3d at 774 (citations omitted). Courts have found a significant degree of competition "when there is similarity or overlap in their sales outlets, trade channels, and customers." *Roederer v. J. Garcia Carrion, S.A.*, 732 F. Supp. 2d 836, 868–69 (D. Minn. 2010) (collecting cases).

This factor is not seriously disputed by the parties in this case. Both Drake and DMACC are educational institutions offering higher educational services. DMACC offers that it is not in direct competition with Drake for two reasons. First, DMACC is a community college whereas Drake is a four-year university. Second, DMACC points out that its cost of attendance is substantially lower than Drake. However, that is where the distinctions end. Both schools primarily serve students in the Des Moines metropolitan area and central Iowa; both market to a

-29-

similar audience of consumers; and both offer programs which include two and four-year degrees. [ECF No. 1 ¶¶ 9, 122, 123, 127]; *see also J & B Wholesale Distrib., Inc. v. Redux Beverages, LLC*, 621 F. Supp. 2d 678, 686 (D. Minn. 2007) (noting that in "assessing this factor, the court should consider 'the extent to which the products differ in content, geographic distribution, market position[,] and audience appeal.'") (citation omitted).

The close geographic proximity between the schools merits extra attention in this case. One of DMACC's campuses is less two miles down the road from Drake's campus in Des Moines. [ECF No. 1 ¶ 192]. In fact, the majority of DMACC's facilities are located within eight miles of Drake.[6] *Id*. ¶ 188. "The proximity factor can apply to both the subject matter of the commerce in which the two parties engage and the geographic areas in which they operate." *Guthrie Healthcare Sys.*, 826 F.3d at 39. The panel for the Second Circuit has aptly explained that, in the context of certain services, geographic proximity can make a substantial difference in customer confusion:

> if the patron of a Grand Concourse coffee shop sees a second coffee shop in a nearby neighborhood using what appears to be the same trademark, she is far more likely to believe that the two coffee shops are affiliated than if the second coffee shop is in San Antonio, Texas.

*Id*. Likewise, the likelihood of confusion substantially increases if a prospective student sees DMACC's D in an advertisement in the Des Moines area as opposed to a D advertised by Duke or Dartmouth. *Id*.

Despite the fact that the services provided by the parties have some differentiating characteristics, including a price disparity, they squarely compete with each other in the Des Moines area. *See Roederer*, 732 F. Supp. 2d at 869 (holding that the competitive proximity factor

---

[6] *See Sahr v. City of Des Moines*, 666 F. Supp. 3d 861, 869 n.1 (S.D. Iowa 2023) (taking judicial notice of the distance between landmarks drawn from sources whose accuracy cannot be reasonably questioned) (citations omitted).

-30-

as to the association or sponsorship of the marks was "not significantly affected by the differences in price and manner of display between [the parties]"). Even if this is not "direct competition," the important consideration is that when "products are related . . . it is reasonable for consumers to think that the products come from the same source, and confusion, therefore, is more likely." *Bumble Bee Seafoods*, 398 F.3d at 1056 (citation omitted). This is because trademark protection extends to the use of a mark for any service "which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." *Anheuser-Busch,* 28 F.3d at 774 (citation omitted). For these reasons, the degree of competition factor greatly contributes to a likelihood of confusion in this case.

### 4.  Intent to Confuse the Public

Intent to confuse the public is not a required element for trademark infringement, but it does raise "an inference of likelihood of confusion." *SquirtCo.*, 628 F.2d at 1091. When considering the intent of the alleged infringer on a motion for preliminary injunction, courts are "reluctant to place undue weight" on the intent factor. *See Bd. of Regents of the Univ. of Houston Sys. v. Houston Coll. of L., Inc.*, 214 F. Supp. 3d 573, 602 (S.D. Tex. 2016) (explaining that on "an expedited timeline" with no discovery a "plaintiff is handcuffed" in providing evidence). The Eighth Circuit has held that "[k]nowledge of another's product and an intent to compete with that product is not" the same as harboring the intent "to mislead and to cause consumer confusion." *ZW USA*, 889 F.3d at 447 (citing *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 766 (8th Cir. 2010)).

Drake argues that this factor weighs in its favor because DMACC's intent can be inferred from three circumstances. First, DMACC is clearly aware of Drake's brand. Second, DMACC's brand is a significant divergence from its customary name and style conventions. And third, Drake

alleges that DMACC has a pattern of disregarding trademark rights. Specifically, "the intent in copying the mark should be 'the intent to derive benefit from the reputation or goodwill of plaintiff.'" *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1157 (10th Cir. 2013) (citation omitted). As such, these contentions do not establish that DMACC intentionally sought to cause confusion with its rebrand.

First, the Eighth Circuit has repeatedly held that "knowledge of another's product and an intent to compete with that product does not equate to predatory intent." *Sensient Techs.*, 613 F.3d at 767; *see also Luigino's, Inc. v. Stouffer Corp.,* 170 F.3d 827, 831 (8th Cir. 1999); *Kellogg Co.*, 824 F.2d at 627. Therefore, the fact that DMACC was aware of Drake and may even have been intending to *compete* with the university, does not necessitate the conclusion that DMACC was intending to mislead the public as to the marks.

Second, although the evidence demonstrates that DMACC's use of the block style "D" in its new logo is noticeably distinct from the school's prior naming conventions, it is not such an illogical change as to warrant an inference regarding DMACC's intent. Even if "DM" or "DSM" would be more a more accurate abbreviation for the mark, there are no rules which require DMACC to utilize those, and the use of a D is a logical symbol for the representation of Des Moines Area Community College. *See Sensient Techs.*, 613 F.3d at 766; *see also Duluth News-Trib.,* 84 F.3d at 1097 (noting that the defendant's new name in its mark was a logical merger of its other marks based on the facts).

Third, the Court assigns little weight to statements made by DMACC about its use of the mark in the lead up to the filing of this case. This factor analyzes DMACC's purported intent to mislead the public, not Drake. As such, the relevant consideration would be whether its rebrand was intended to cause confusion in the public regarding its mark and Drake's Vintage D. The

conversations between the parties about how DMACC planned to utilize its mark offers little probative value to this factor. Finally, the Court notes concern with DMACC improperly using the intellectual property of others. [ECF Nos. 18-1 at 27; 23-2 at 13–14].   However, there is nothing in the record to establish that these uses were intentional infringement.

In cases where courts have found an intent to confuse, there is typically some direct evidence to establish the defendant's scienter.  *See Bumble Bee Seafoods*, 398 F.3d at 1056 (holding that the intent to confuse factor weighed in favor of a likelihood of confusion because the alleged infringer had adopted the contested mark to take advantage of the "considerable equity" others had built in the mark and had admitted his intentions to do so on the record); *see also Cmty. of Christ Copyright Corp. v. Devon Park Restoration*, 683 F. Supp. 2d 1006, 1015 (W.D. Mo. 2010) (finding intent to confuse where "Defendants were aware Plaintiffs had protectable rights in the marks-in-suit, chose to use those marks anyway, sent Plaintiffs a letter evincing their intent to continue using Plaintiffs' marks, and have admitted that they used at least one of the marks-in-suit because they did not want potential members to believe they had started a new church.").  There is simply not enough evidence in the record to adequately establish DMACC's intent in this case. *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004).  This factor does not significantly undermine nor support a likelihood of confusion.

### 5.   Actual Confusion

Actual confusion, like intent to confuse, is "not essential" to a successful claim for trademark infringement but "it is positive proof of likelihood of confusion."  *SquirtCo.*, 628 F.2d at 1091; *see also Hubbard Feeds,* 182 F.3d at 602 (observing that actual confusion "is perhaps the most effective way to prove a likelihood of confusion").  The Court analyzes this factor based upon "the number and extent of instances of actual confusion."  *Sensient Techs.*, 613 F.3d at 768

(quoting *Duluth News-Trib.,* 84 F.3d at 1098).  The weight that courts give such instances depends on the techniques used to gather the information and potential accuracy.  *See ConAgra, Inc. v. George A. Hormel, & Co*., 990 F.2d 368, 370 (8th Cir. 1993).

Both parties have submitted evidence of social media comments made by the public regarding the marks in this case.  Drake asserts that these are examples of actual confusion, whereas DMACC argues these comments are unreliable and insufficient.  Although these comments, specifically those made online before litigation commenced, do present a general thread that the marks look similar, they do not necessarily depict confusion.

Drake also points to several isolated instances for evidence of actual confusion including an interaction it has termed the "Rotary Club incident" where Santa gave DMACC's director of marketing a copy of the book, *Trademark and Copyright Infringement for Dummies* while comparing the two marks.  There is also a clip from a KCCI television news broadcast where people on the street are interviewed about the marks.  This news segment was aired after the complaint had been filed.  Notably, Drake never conducted nor submitted its own survey evidence in this case to establish actual incidents of confusion.  Survey evidence would have been helpful to the Court in analyzing this factor.  "[S]urveys can be used to show actual confusion, but their evidentiary value depends on the relevance of the questions asked and the technical adequacy of the survey procedures."  *Id.* (alteration in original) (citation omitted).

Analyzing the evidence that was submitted on this point, the Court is not convinced that it is reliable evidence of actual confusion.  The district court in *ConAgra* similarly found that the surveys submitted in that case "were technically flawed and thus gave the results less evidentiary weight."  *Id*. (affirming the district court's exercise of discretion "in reviewing the survey evidence and methodology and deciding to discount the survey results").

-34-

The Court notes several flaws with the data presented by Drake and its asserted reliability. As previously mentioned, the individuals commenting on Facebook were self-selected. They reflect the opinions of those who chose to opine on the topic and do not necessarily reflect an accurate sampling of the public or potential consumers. Additionally, after one person makes a comment regarding the similarity of the marks, every other person who makes a comparable comment may have been influenced by previous comments. Essentially, it is unknowable whether a given social media user was organically confused by DMACC's new mark, or if they were influenced by previous comments. This bias is shot through the comments, as shown by the fact that many comments are simply responding to previous comments—not offering any personal observation about potential confusion. Overall, the Court has serious concerns about the nature of social media comments as evidence of actual incidents of confusion. It is an inadequate technique and a questionable methodology that does not merit substantial weight.

Similarly, the Court was provided very little information about KCCI's interviews. The video clip portrays two individuals allegedly confusing DMACC's new mark as Drake's Vintage D. However, there is no information as to how many people were interviewed, the number of people who identified the marks incorrectly versus correctly, what information participants were provided before answering, or even precisely what they were shown before answering. There is no way for the Court to determine if this data was adequately and impartially collected. *See id.*

The "Rotary Club Incident" faces similar deficiencies. It was simply a premeditated prank. The planning and preparation to create the PowerPoint slide comparing the marks and to obtain a copy of the book evinces a cleverness on the part of some Rotary Club members, but it does not establish a reliable evidentiary basis for the determination of intellectual property rights. There is no basis to discern whether the response in the room was agreement with Santa's legal analysis,

or merely the response of a jolly cocktail hour crowd during a holiday party. In other words, this is not an accurate representation of public perception adequate to constitute evidence of actual confusion. Although Drake need not demonstrate incidents of actual confusion to establish a likelihood of confusion, it has failed to do so.

### 6. Customer Sophistication

"[I]n a trademark infringement action the kind of product, its cost and the conditions of purchase are important factors in considering whether the degree of care exercised by the purchaser can eliminate the likelihood of confusion which would otherwise exist." *SquirtCo*., 628 F.2d at 1091. The Court must stand "in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Luigino's, Inc*., 170 F.3d at 831(cleaned up) (citation omitted). A higher level of care is expected "where the buyer in question has a particular expertise or sophistication." *Progressive Distribution Servs., Inc. v. United Parcel Serv., Inc.,* 856 F.3d 416, 435 (6th Cir. 2017) (citation omitted).

The parties contest the level of customer sophistication in this case and how that impacts a likelihood of confusion between the two marks. Selecting a post-secondary educational institution and making the significant financial commitment as part of that choice, is an important decision. Potential students will often conduct substantial research into their higher education options, including making on-campus visits, before deciding where they want to attend school. The marks in this case signify the respective educational institutions.

However, the marks are also printed on marketing materials, displayed on the parties' websites, and stamped on a plethora of merchandise. At their core, these uses serve to advertise the schools to the public at-large. So, while DMACC may be correct in maintaining that

prospective students are unlikely to enroll in class at DMACC by mistake, thinking it is Drake, that is not the only purchasing decision that must be considered in the analysis. It is very possible that any person would purchase merchandise, like t-shirts; bumper stickers; or stuffed animals. These purchases are far less costly and made with less care. Although these purchases are typically made in an obvious environment—such as a branded website or on campus—confusion could still arise if made from other sources.

More importantly, "a consumer exercising considerable care may still be confused, however, [when the defendant] utilizes identical or substantially similar marks while offering the same category of services in the same geographical location." *Cmty. of Christ Copyright*, 634 F.3d at 1009. This is perhaps best demonstrated by an exchange at the injunction hearing between the Court and DMACC's counsel.

When discussing the hat shown in Figure 10, DMACC noted that a consumer purchasing that hat would not be confused because it was purchased at the DMACC bookstore. The Court inquired how, given the similarity of the mark to Drake's, any person who saw the hat out in public would know that it had come from the DMACC bookstore as opposed to the Drake bookstore. The answer is that they would not. Other than by viewing the distinctions in the mark itself, such a person would have no way of knowing whether the hat was advertising the services of Drake or DMACC.



Figure 10 [ECF No. 1 ¶ 171]

-37-

Even viewing this strictly from the perspective of a purchaser, of either educational services or of the apparel products discussed above, the marks are so similar that there is legitimate concern of confusion of sponsorship or affiliation as much as there is a confusion of source. In a confusion of sponsorship case, "the customers' degree of care is of diminished importance." *Frosty Treats*, 426 F.3d at 1010.

For these reasons, although a consumer purchasing higher-educational services may be more sophisticated or exercise a higher level of care, that is not the entirety of the analysis regarding potential confusion. Overall, this factor does not weigh heavily in favor of either party.

### 7.  Totality of Circumstances

After careful consideration of all the *SquirtCo.* factors, the Court finds that Drake has demonstrated a likelihood of success in establishing trademark infringement. Several key factors support this conclusion: Drake's century-long use of its Vintage D mark in the Des Moines area has created a protectable trademark that has acquired distinctiveness through extensive use. The significant visual similarity between DMACC's new mark and Drake's Vintage D, particularly in the dominant block-style D and blue and white color scheme, creates a likelihood of confusion. This risk is amplified by the close geographic proximity between the schools and overlap in educational services in the Des Moines market. While DMACC's inclusion of its house mark provides some differentiation, it does not sufficiently mitigate the likelihood that consumers will perceive an affiliation or connection between the institutions given the overall similarity of the marks and services provided. The sophistication of potential students in selecting education institutions does not overcome these factors, as confusion may still arise regarding sponsorship or affiliation, particularly in the broader marketplace where the marks appear on merchandise and marketing materials.

The Court's conclusion "does not hinge on a single factor but requires a consideration of numerous factors to determine whether under all the circumstances there is a likelihood of confusion." *SquirtCo.*, 628 F.2d at 1091. "The factors from *SquirtCo* guide our analysis, but the ultimate determination of whether confusion is likely is not to be mechanically determined through rigid application of the factors." *Bumble Bee Seafoods*, 398 F.3d at 1054. "[N]o one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." *Id*. Overall, the *SquirtCo* factors considered together support a likelihood of confusion between Drake's Vintage D and DMACC's new logo, specifically as to the affiliation or association of the two schools. Given the incredibly close proximity, remarkable similarity of the marks including their colors, and the identical nature of the services provided by the parties within the same geographic area, Drake has established that is likely to succeed on the merits of its case in establishing a likelihood of confusion.

v.    Irreparable Harm

In a trademark infringement case, if a party establishes a likelihood of success on the merits, there is a statutory rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). The presumption is rebuttable, and a defendant may negate it with additional evidence on the merits or in plaintiff's delay in seeking preliminary relief. *See Hubbard Feeds,* 182 F.3d at 603.

Drake has established a likelihood of success on the merits and it is entitled to the presumption of irreparable harm unless it is rebutted by DMACC. DMACC asserts that Drake is not entitled to the presumption for two reasons.

First, that Drake delayed nine months in bringing suit in this case after DMACC's rebrand. Essentially, DMACC argues that if Drake were incurring irreparable harm, it would not have delayed in filing. Second, DMACC contends that it has been using a "blue and white standalone

-39-

D" since 2014 and Drake never complained about that use. Both of these arguments are unconvincing. The record demonstrates that by at least February of 2024, if not sooner, Drake was in contact with DMACC representatives regarding the brand. [ECF No. 1 ¶ 221]. Simply because the parties attempted to work out a resolution before pursuing litigation does not undermine the fact that irreparable harm was and is still incurring. Additionally, the Court is disinclined to give any weight to DMACC's prior use argument. The use of a blue and white letter D which they reference is displayed in Figure 11.



Figure 11 [ECF No. 23-2 at 22]

This D is fundamentally different than the current mark at issue in this litigation. Drake could not have been "asleep at the wheel" in enforcing its trademark rights against a mark which is distinct and as such was not incurring harm. For these reasons, DMACC has not rebutted the presumption that the use of its D is causing irreparable harm to Drake.

### vi.    Balance of Equities

The next consideration in the preliminary injunction analysis is the balance of equities. *Dataphase*, 640 F.2d at 113–14. When balancing the equities of a preliminary injunction courts weigh "the threat of irreparable harm shown by the movant against the injury that granting the injunction will inflict on other parties litigant." *MPAY Inc.*, 970 F.3d at 1020 (cleaned up) (citation omitted). Balancing the equities entails "distinguishing between weak or illusory injuries and very

-40-

real threats of injuries." *Rodriguez v. Molina*, 608 F. Supp. 3d 791, 798 (S.D. Iowa 2022) (cleaned up) (citation omitted).

The balance of equities weighs in favor of granting preliminary injunctive relief. Drake faces irreparable harm to its century-old brand identity and institutional goodwill if DMACC continues use of its new mark. *See Moon Seed LLC v. Weidner*, No. 3:20-cv-00104-GE-SBJ, 2021 WL 2627455, at *7 (S.D. Iowa Apr. 22, 2021) (finding balance favored plaintiff where defendant's continued use of mark threatened plaintiff's brand identity). Although DMACC argues it would incur costs to revise its branding, these self-inflicted harms from knowingly adopting potentially infringing marks do not outweigh the incalculable damage to Drake's distinctive identity and reputation. *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 729–30 (3d Cir. 2004) (holding that harm from defendant's own "deliberate risk" in using similar mark was "far outweighed by immeasurable damage" to plaintiff's trademark).

DMACC may choose to return to its prior successful branding that served it well for 35 years, requiring only the cessation of its recently-adopted D and blue/white color scheme. This temporary burden pales in comparison to the erosion of Drake's century-old brand identity and the confusion created by having two post-secondary institutions using nearly identical branding in the same geographic market. Courts have consistently held that where a defendant's harm stems from its own decision to adopt an allegedly infringing mark, such harm carries little weight in the equitable balance against protecting established trademark rights. *See E.A. Sween Co., Inc. v. Deli Express of Tenafly, LLC*, 19 F. Supp. 3d 560, 577 (D. N.J. 2014) (finding "[t]he only 'hardship' imposed upon Defendant is that it refrain from engaging in unlawful conduct.").

### vii.    Public Interest

The last factor requires a court to consider whether "an injunction is in the public interest." *Scott v. Benson*, 863 F. Supp. 2d 836, 844 (N.D. Iowa 2012) (citing *Winter*, 555 U.S. at 20).  The public interest factor "invites the court to indulge in broad observations about conduct that is generally recognizable as costly or injurious." *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1048 (N.D. Iowa 2008).  This analysis entails balancing the specific public interests that might be harmed and what public interests might be served.  *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 997–98 (8th Cir. 2011).

The public interest favors granting a preliminary injunction here.  The public has an interest in being able to clearly distinguish between these educational institutions.  Having two institutions using nearly identical branding elements in the same geographic market could create unnecessary confusion that could lead students to enroll in or apply to the wrong institution.  This risk is heightened given DMACC's rapid growth and expansion in course offerings that increasingly overlap with Drake's.  Although DMACC has a right to compete, the public interest is best served by requiring it to do so under distinct branding that allows prospective students to make informed choices between institutions.  *See, e.g., Aveda*, 706 F. Supp. at 1431–32 (recognizing strong public interest in preventing marketplace confusion through trademark protection).

### b.    Dilution Claims

Drake alternatively seeks injunctive relief on its unfair competition and dilution claims.  In light of the Court's conclusion that the school is entitled to an injunction on its claim for trademark infringement, it will not address these other claims on a preliminary basis.

III. CONCLUSION

For the reasons discussed above, Drake's Motion for Preliminary Injunction is GRANTED. [ECF No. 18].  The Court enters the following injunction:

Des Moines Area Community College, Des Moines Area Community College Foundation, their officers, agents, and employees ("Defendants") are **ENJOINED** from using a block-style "D" trademark in conjunction with any color combination of white and blue to denote their educational services, athletics, or ancillary goods and services.  This includes the use of such a "D" even when it is paired with a DMACC house mark or other indicia of the college.

Defendants must cease current use of all such trademarks within **21 days** of the date of this Order.  Defendants must certify compliance with this injunction in a filing on the docket by that date.  This injunction shall remain in force until further order of the Court.

When a preliminary injunction is issued, the Federal Rules of Civil Procedure require the movant to give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  Drake is ORDERED to remit a bond in the amount of $25,000 within **7 days** of this Order to the Clerk of Court for the United States District Court for the Southern District of Iowa.

IT IS SO ORDERED.

Dated this 22nd day of November, 2024.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

**NOTICE OF APPEAL**

Date: 11/27/2024          Case No: 4:24-cv-00227-SMR-SBJ

Case Caption: Drake University v. Des Moines Area Community College Foundation and Des Moines Area Community College

Notice is hereby given that Defendants and Counterclaim Plaintiffs Des Moines Area Community College Foundation and Des Moines Area Community College appeal to the:

**X** US Court of Appeals for the Eighth Circuit          ☐ IASD District Court Judge

from the Judgment/Order entered in this action on  November 22, 2024.

**Transcript Order Form:**

Please prepare a transcript of:

☐ Plea Hearing          ☐ Sentencing          ☐ Trial

**X** Other Hearing(s) on Preliminary Injunction held on October 15, 2024

I am not ordering a transcript because: _____

*Reminder: CJA counsel will need to complete the AUTH 24 form in CJA eVoucher.*

**CERTIFICATE OF COMPLIANCE**

Appellant hereby certifies that copies of this notice of appeal/transcript order form have been filed/served upon the U.S. District Court, court reporter, and all counsel of record and that satisfactory arrangement for payment of the cost(s) of transcript(s) ordered have been made with the court reporter (Fed Rule App Proc 10(b)).

Attorney/Party Signature: /s/ R. Scott Johnson          Date: 11/27/2024

Address: 111. E. Grand Avenue, Suite 301, Des Moines, IA 50309

Phone Number: 515-242-8900

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF IOWA**

# Notice of Appeal Supplement

Case Name: Drake University vs. Des Moines Area Community College Foundation and Des

Moines Area Community College

District Court Case Number: 4:24-cv-00227-SMR-SBJ

Appeal Fee (605.00) Status:  Pd X___IFP _____Pending _____Government Appeal _____

Counsel: Appointed _____CJA _____Retained _____Pro Se _____Pro Bono _____FPD _____

*Reminder: CJA appointed counsel will need to complete their AUTH 24 form thru CJA eVoucher.

Appeal filed by: Counsel X___Pro Se _____

Any reason why counsel should not be appointed: _____

Certificate of Appealability: Denied _____Granted _____Not Issue _____

Pending post Judgment motions: Yes _____No X___

If so, type of motion(s) and docket entry number:

_____

High Public Interest Case: Yes X___No _____

Simultaneous Opinion release Requested: Yes _____No _____

Trial Held: Bench _____Jury _____No X___

Court Reporter: Yes X___No _____

Reporter's Name: Kelli Mulcahy

Appealing: Order prior to final judgment X___or final judgment _____

***File this form with the Notice of Appeal***

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF IOWA**

# Notice of Appeal Supplement

Case Name: _____ vs. _____

District Court Case Number: _____

Appeal Fee (605.00) Status:  Pd _____ IFP _____ Pending _____ Government Appeal _____ Counsel:

Appointed _____ CJA _____ Retained _____ Pro Se _____ Pro Bono _____

*Reminder: CJA appointed counsel will need to complete their AUTH 24 form thru CJA eVoucher.*

Appeal filed by: Counsel _____ Pro Se _____

Any reason why counsel should not be appointed: _____

Certificate of Appealability: Denied _____ Granted _____ Not Issue _____

Pending post Judgment motions: Yes _____ No _____

If so, type of motion(s) and docket entry number:

_____

High Public Interest Case: Yes _____ No _____

Simultaneous Opinion release Requested: Yes _____ No _____

Trial Held: Bench _____ Jury _____ No _____

Court Reporter: Yes _____ No _____

Reporter's Name: _____

Appealing: Order prior to final judgment ___ or final judgment _____

***File this form with the Notice of Appeal***