Case Nos. 24-3445, 25-1053

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

Drake University

Plaintiff - Appellee / Cross-Appellant

v.

Des Moines Area Community College Foundation; Des Moines Area
Community College

Defendants - Appellants / Cross-Appellees

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

Case No. 4:24-CV-00227
The Honorable Stephanie M. Rose

---

### RESPONSE AND REPLY BRIEF OF
### APPELLANTS / CROSS-APPELLEES

---

R. Scott Johnson (#AT0004007)
Cara S. Donels (#AT0014198)
Erin M. Boggess (#AT0015950)
FREDRIKSON & BYRON, P.A.
111 East Grand Avenue, Suite 301
Des Moines, IA 50309-1977
Telephone: (515) 242-8900

Laura L. Myers (Minn. #0387116)
FREDRIKSON & BYRON, P.A.
60 South 6th Street, Suite 1500
Minneapolis, MN 55402-4400
Telephone: (612) 492-7000

*Attorneys for Defendants - Appellants
/ Cross-Appellees*

Dated: May 1, 2025

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................iv

DMACC'S RESPONSE TO DRAKE'S CROSS-APPEAL .........................1

I.     SUMMARY OF THE ARGUMENT ............................................1

II.     ARGUMENT .................................................................................5

    A.     Controlling Eighth Circuit Precedent Prevents
           Enjoining Conduct That Is Not In Drake's
           Complaint..............................................................................5

    B.     Drake's Feigned Ignorance Regarding The DMACC
           Bear Paw D Is Implausible And Irrelevant.....................8

    C.     DMACC Relied On The DMACC Bear Paw D's
           Similarity To The DMACC Rebrand D To Overcome
           Any Presumption Of Irreparable Harm—DMACC
           Did Not Agree The DMACC Bear Paw D Is Similar
           To The Vintage D.................................................................10

    D.     This Court Should Not Assess Likelihood Of
           Confusion Between The DMACC Bear Paw D And
           The Vintage D For The First Time On Appeal. ..............13

III.     CONCLUSION............................................................................14

DMACC'S REPLY IN SUPPORT OF ITS APPEAL..............................16

I.     DRAKE MISREPRESENTS THE APPLICABLE
    STANDARD OF REVIEW.........................................................16

II.     DRAKE DISREGARDS THE APPLICABLE STANDARD
    FOR A PRELIMINARY INJUNCTION IMPOSED BY
    THIS COURT.............................................................................17

# TABLE OF CONTENTS

III. THE PRELIMINARY INJUNCTION IS UNSUPPORTED BECAUSE IT IS BASED ON THE VINTAGE D ALONE, FOR WHICH DRAKE DID NOT ESTABLISH CURRENT COMMON LAW TRADEMARK RIGHTS. ................................................................... 18

    A.   Drake's Registered Trademarks Are Irrelevant On Appeal. ................................................................. 19

    B.   The Limited Evidence Identified By Drake Does Not Establish Current Common Law Trademark Rights In The Vintage D Alone Without A Bulldog. .................. 22

        1.   Drake Admits Its Historic Evidence Is Insufficient. ................................................ 22

        2.   Drake Agrees The Undated Evidence Is Irrelevant Because It Was Not Relied On By The District Court. .......................................... 23

        3.   The Limited Evidence Drake Agrees The District Court Relied On Is Insufficient. ............... 24

    C.   At Best, Drake May Have Common Law Trademark Rights In The Vintage D In Combination With A Bulldog, Which Is What The District Court Should Have Analyzed To Assess Likelihood Of Confusion With The DMACC Rebrand Logo. ................................... 31

    D.   Drake's Irrelevant Arguments Regarding Third-Party "D" Trademarks Do Not Impact DMACC's Appeal. ................................................................. 35

IV. THE PRELIMINARY INJUNCTION IS OVERBROAD. ........ 37

Appellate Case: 24-3445     Page: 3     Date Filed: 05/02/2025   Entry ID: 5512772

# TABLE OF CONTENTS

A. It Is Undisputed That The Preliminary Injunction Prohibits Conduct That Is Not Identified In Drake's Complaint Or Motion For Preliminary Injunction, Both Of Which Are Based Entirely On DMACC's Alleged Uses Of A Standalone "D" After Its 2023 Rebrand. ...................................................................... 37

B. The Preliminary Injunction Should Not Include The DMACC Rebrand Logo. .................................................. 40

V. CONCLUSION ............................................................................ 41

CERTIFICATE OF COMPLIANCE ........................................................ 43

CERTIFICATE OF SERVICE ................................................................. 45

Appellate Case: 24-3445 Page: 4 Date Filed: 05/02/2025 Entry ID: 5512772

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.,*
    815 F.2d 500 (8th Cir. 1987)......................................................18

*Cervejaria Petropolis SA v. Ambev S.A.,*
    787 F. App'x 727 (Fed. Cir. 2019)..........................................24, 25

*Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.,*
    48 F.3d 365 (8th Cir. 1995)......................................................17

*Davis v. Walt Disney Co.,*
    393 F. Supp. 2d 839 (D. Minn. 2005) .....................................30

*Devose v. Harrington,*
    42 F.3d 470 (8th Cir. 1994) (per curiam) .................2, 6, 14, 37

*Flavor Corp. of Am. v. Kremin Indus., Inc.,*
    493 F.2d 275 (8th Cir. 1974)...................................................30

*Four Seasons Hotel Ltd. v. Koury Corp.,*
    776 F. Supp. 240 (E.D.N.C. 1991) ..........................................32

*Gen. Mills, Inc. v. Kellogg Co.,*
    824 F.2d 622 (8th Cir. 1987)...................................................34

*H&R Block, Inc. v. Block, Inc.,*
    58 F. 4th 939 (8th Cir. 2023) ..........................................passim

*Hubbard Feeds, Inc. v. Animal Feed Suppl., Inc.,*
    182 F.3d 598 (8th Cir. 1999)..........................................4, 11, 13

*Igloo Prods. Corp. v. Brantex, Inc.,*
    202 F.3d 814 (5th Cir. 2000)...................................................21

*In re National Data Corp.,*
    753 F.2d 1056 (Fed. Cir. 1985)..........................................20, 21

iv

*JIPC Mgmt., Inc. v. Incredible Pizza Co.*,
    No. CV 08-04310 MMM (PLAx), 2009 WL 10671438 (C.D.
    Cal. June 24, 2009) ............................................................... 32

*Kennedy Bldg. Assocs. v. CBS Corp.*,
    476 F.3d 530 (8th Cir. 2007) .................................................. 22

*LFP IP, LLC v. Hustler Cincinnati, Inc.*,
    810 F.3d 424 (6th Cir. 2016) .................................................... 7

*Masters v. UHS of Del., Inc.*,
    631 F.3d 464 (8th Cir. 2011) ................................... 3, 9, 10, 39

*Moon Seed LLC v. Weidner*,
    604 F. Supp. 3d 780 (S.D. Iowa 2022) .................................. 18

*MPAY Inc. v. Erie Custom Comput. Appls., Inc.*,
    907 F.3d 1010 (8th Cir. 2020) ................................................ 22

*PGP, LLC v. TPII, LLC*,
    734 F. App'x 330 (6th Cir. 2018) .......................................... 16

*Phyllis Schlafly Revocable Trust v. Cori*,
    924 F.3d 1004 (8th Cir. 2019) ......................................... 11, 13

*RE/MAX of New England, Inc. v. Prestige Real Estate, Inc.*,
    No. 14-12121-GAO, 2014 WL 3058295 (D. Mass. July 7, 2014) ........ 24

*S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*,
    835 F.3d 660 (7th Cir. 2016) .................................................. 20

*Sensient Techs. Corp. v. SensoryEffects Flavor Co.*,
    613 F.3d 754 (8th Cir. 2010) .................................................. 34

*Weems Indus., Inc. v. Teknor Apex Co.*,
    540 F. Supp. 3d 839 (N.D. Iowa 2021) .................................. 18

*Wrist-Rocket Mfg. Co. v. Saunders Archery Co.*,
    516 F.2d 846 (8th Cir. 1975) ............................................. 9, 13

v

*Zhou v. Int'l Bus. Machs. Corp.*,
   167 F. Supp. 3d 1008 (N.D. Iowa 2016) ................................................ 6

## Rules and Statutes

15 U.S.C. § 1072 ....................................................................................... 2, 9

15 U.S.C. § 1127 ...................................................................... 23, 24, 26, 27

Fed. R. App. P. 30(a)(2) ........................................................................... 15

## Other Authorities

1 McCarthy on Trademarks & Unfair Competition § 11:89 (5th
   ed. 2025) ............................................................................................. 35

Appellate Case: 24-3445    Page: 7    Date Filed: 05/02/2025 Entry ID: 5512772

<u>**DMACC'S RESPONSE TO DRAKE'S CROSS-APPEAL**</u>

## I.   SUMMARY OF THE ARGUMENT

Defendants - Appellants / Cross-Appellees Des Moines Area Community College Foundation and Des Moines Area Community College (collectively, "DMACC") are asking this Court to reverse, or at least vacate and remand, the district court's entry of a preliminary injunction against DMACC.  Thus, if DMACC is successful, Plaintiff - Appellee / Cross-Appellant Drake University's ("Drake") cross-appeal regarding the scope of that injunction is moot and this Court can summarily dismiss Drake's cross-appeal.

If, however, this Court does not reverse or vacate the district court's preliminary injunction, it should affirm the district court's decision not to enjoin DMACC's long-standing use of the "DMACC Bear Paw D" shown below for the following reasons.



<u>First</u>, it is undisputed that the DMACC Bear Paw D was not included in Drake's Complaint or Motion for Preliminary Injunction.

Appellate Case: 24-3445     Page: 8     Date Filed: 05/02/2025 Entry ID: 5512772

(*See* Brief of Appellee/Cross-Appellant, at 54-58; *see also* App. 048-108, R. Doc. 17; App. 253-255, R. Doc. 18.) The district court correctly pointed that out in its clarification Order. (*See* App. 045-046, R. Doc. 101, at 2-3, Add. 045-046.) Thus, governing Eighth Circuit precedent prevents the inclusion of the DMACC Bear Paw D within the scope of the preliminary injunction. *See Devose v. Harrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam). This is reason enough to affirm the district court's decision excluding the DMACC Bear Paw D.

Second, Drake's assertion that it was unaware of the DMACC Bear Paw D until the preliminary injunction proceedings is a red herring. Since October 14, 2014, DMACC has owned a federal registration for the trademark below that incorporates the DMACC Bear Paw D to refer to DMACC.



(App. 265, R. Doc. 23-5, at 2.) The Lanham Act provides that "[r]egistration of a mark on the principal register…shall be constructive notice of the registrant's claim of ownership thereof." 15 U.S.C. § 1072.

Likewise, DMACC publicly used the DMACC Bear Paw D on Facebook to identify DMACC for many years. (*See* App. 268-355, R. Doc. 23-6.) Drake's willful blindness or lack of diligence does not excuse its failure to include the DMACC Bear Paw D in its Complaint and Motion for Preliminary Injunction. Further, Drake's unreasonable delay in objecting to the DMACC Bear Paw D supports several affirmative defenses that DMACC would have asserted against any attempt to enjoin DMACC's use of its long-standing trademark. *See Masters v. UHS of Del., Inc.*, 631 F.3d 464, 469 (8th Cir. 2011). It would be unfairly prejudicial to deprive DMACC of the opportunity to assert and be heard on those defenses.

Third, Drake misconstrues DMACC's reliance on the DMACC Bear Paw D in its opposition to Drake's Motion for Preliminary Injunction. DMACC did not assert that the DMACC Bear Paw D is similar to Drake's purported "Vintage D." Instead, DMACC asserted that the DMACC Bear Paw D it had used for years (and federally registered in 2014) is similar to the "D" in the "DMACC Rebrand Logo" (shown on the left on the next page) that DMACC began using in 2023 and is the subject of Drake's lawsuit.

Appellate Case: 24-3445    Page: 10    Date Filed: 05/02/2025 Entry ID: 5512772

 

Based on that premise, DMACC argued that Drake's unreasonable delay in asserting claims based on DMACC's use of the "D" design in both the DMACC Bear Paw D and DMACC Rebrand Logo prevented application of a presumption of irreparable harm to support a preliminary injunction. *See Hubbard Feeds, Inc. v. Animal Feed Suppl., Inc.*, 182 F.3d 598, 603 (8th Cir. 1999). The district court disagreed based on its determination that the DMACC Bear Paw D is "fundamentally different." (App. 040, R. Doc. 87, at 40, Add. 040.) But if this Court reverses or vacates that decision, it must necessarily reverse the entry of the injunction itself due to lack of irreparable harm or at least vacate and remand to the district court to further analyze Drake's delay in filing suit and its impact on the applied presumption of irreparable harm.

<u>Fourth</u>, Drake's attempt to argue likelihood of confusion with respect to the DMACC Bear Paw D for the first time on appeal is improper and based on a canard. Contrary to Drake's characterization,

4

the district court did not conclude that a likelihood of confusion was not present—indeed, the district court specifically explained it "did not conduct a *Squirt Co.* analysis" for the DMACC Bear Paw D because "it was not included in Drake's complaint" or "in their motion for preliminary injunction." (App. 046, R. Doc. 101, at 3, Add. 046.) This Court should not conduct a likelihood of confusion analysis with respect to an unchallenged trademark for the first time on appeal.

If this Court does not reverse or vacate the preliminary injunction based on DMACC's appeal, it should affirm the district court's decision regarding the DMACC Bear Paw D for all of these reasons.

## II. ARGUMENT

### A. Controlling Eighth Circuit Precedent Prevents Enjoining Conduct That Is Not In Drake's Complaint.

Drake does not—and cannot—dispute that the DMACC Bear Paw D is identified nowhere in its Complaint or Motion for Preliminary Injunction. (*See* Brief of Appellee/Cross-Appellant, at 54-58; *see also* App. 048-108, R. Doc. 17; App. 253-255, R. Doc. 18.) As explained in DMACC's opening brief, Drake's allegations relate solely to the "D" in the DMACC Rebrand Logo that DMACC began using in 2023. (*See* App. 051, R. Doc. 17, ¶ 1; App. 083, R. Doc. 17, ¶ 145; App. 236, R. Doc. 1-78; App.

5

237, R. Doc. 1-79; App. 253, R. Doc. 18, ¶ 1; App. 254, R. Doc. 18, ¶ 5; Add. 051-057.)  This is consistent with the district court's assessment and reason for clarifying that "DMACC's bear paw 'D' is not included within the scope of the Court's injunction."  (App. 046, R. Doc. 101, at 3, Add. 046 (explaining that "[i]t is clear that DMACC's bear paw D was not included in Drake's complaint," "Drake also fails to mention DMACC's bear paw D in their motion for preliminary injunction," and for these reasons, "the Court did not conduct a *Squirt Co.* analysis of that mark").)[1]

The district court's decision is supported by governing Eighth Circuit law.  *See Devose*, 42 F.3d at 471 ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint…."); *see also Zhou v. Int'l Bus. Machs. Corp.*, 167 F. Supp. 3d 1008, 1011 (N.D. Iowa 2016) ("A preliminary injunction that bears no relationship to the claims and events alleged in the complaint would be unworkable, as the issues giving rise to that injunction will not be addressed, let alone resolved, at trial.").  Despite DMACC relying on this

---

[1] Notably, despite the district court's statements, Drake has made no attempt to amend its Complaint to include the DMACC Bear Paw D.

case law in its opening brief to support its argument that the preliminary injunction is overbroad, Drake ignored it in its cross-appeal.

Instead, Drake relied solely on a single case from the Sixth Circuit—*LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424 (6th Cir. 2016). In addition to being outside this Circuit, the *Hustler* case is inapposite. In *Hustler*, "the district court appropriately adjusted its injunction to respond to changed circumstances," specifically, the defendant "had opened a new retail store" using a new name that was not considered when the district court entered summary judgment and a permanent injunction in plaintiffs' favor, but was within the scope of the plaintiffs' complaint based on their trademarks.[2] *See id.* at 424-27. Thus, in *Hustler*, the plaintiffs' complaint could not have identified the name of the "new retail store" because it did not exist when the complaint was filed. In sharp contrast, there are no changed circumstances here; DMACC has been using its DMACC Bear Paw D for years and federally

---

[2] Drake's contention that "[n]owhere in the district court or appellate decision does it indicate that Larry's original complaint or preliminary injunction motion mentions the LARRY FLYNT trademark" (Brief of Appellee/Cross-Appellant, at 55), ignores that the original injunction prohibited defendants from "using any trademark or any variation thereof owned" by plaintiffs, which necessarily includes the LARRY FLYNT trademark. *Hustler*, 810 F.3d at 425.

registered it in 2014—long before Drake filed this case and sought injunctive relief. (App. 265, R. Doc. 23-5, at 2; App. 268-355, R. Doc. 23-6.) Nothing in *Hustler* suggests that a plaintiff can obtain a preliminary injunction prohibiting conduct that is outside the scope of the complaint. And even if it did, *Hustler* is not controlling and would be contrary to governing Eighth Circuit law.

Drake's failure to include the DMACC Bear Paw D in its Complaint and Motion for Preliminary Injunction is reason enough to affirm the district court's clarification that the DMACC Bear Paw D is not subject to the preliminary injunction.

**B.** **Drake's Feigned Ignorance Regarding The DMACC Bear Paw D Is Implausible And Irrelevant.**

Drake's alleged lack of awareness does not excuse its failure to include the DMACC Bear Paw D in its Complaint and Motion for Preliminary Injunction. For over a decade, DMACC has owned a federal registration for the trademark below in which the DMACC Bear Paw D is used to identify DMACC.



(App. 265, R. Doc. 23-5, at 2.) Under the Lanham Act, "registration of a mark on the principal register...shall be constructive notice of the registrant's claim of ownership thereof." 15 U.S.C. § 1072; *see also Wrist-Rocket Mfg. Co. v. Saunders Archery Co.*, 516 F.2d 846, 849 n.5 (8th Cir. 1975) (disregarding appellee's claim that he had no prior knowledge of the trademark because the federal registration provides constructive notice of ownership). This is a sufficient basis to disregard Drake's purported lack of knowledge.

Moreover, DMACC has publicly used the registered trademark above and the DMACC Bear Paw D by itself for years on its Facebook page. (*See* App. 268-355, R. Doc. 23-6.) When assessing a trademark owner's failure to object to an allegedly infringing trademark, the question is not limited to actual knowledge but rather what the trademark owner knew or should have known. *See, e.g., Masters*, 631 F.3d at 469-70. Drake knew or should have known about the DMACC Bear Paw D well before it filed its lawsuit due to DMACC's public use for years and federal trademark registration. Indeed, if Drake had asserted that the DMACC Bear Paw D infringes Drake's trademarks and sought injunctive relief based on DMACC's use of the DMACC Bear Paw D,

9

DMACC would have asserted a number of delay-based affirmative defenses that would have impacted the district court's analysis of Drake's success on the merits.[3]  *See id.* at 469 (identifying legal standard for laches, acquiescence, and estoppel).

Drake's alleged lack of actual knowledge does not change the fact that Eighth Circuit law prevents it from obtaining a preliminary injunction prohibiting conduct outside the scope of its Complaint.

## C. DMACC Relied On The DMACC Bear Paw D's Similarity To The DMACC Rebrand D To Overcome Any Presumption Of Irreparable Harm—DMACC Did Not Agree The DMACC Bear Paw D Is Similar To The Vintage D.

In another strained argument, Drake contends that the district court's determination that the DMACC Bear Paw D is "visually distinct and fundamentally different" was legal error based on Drake's false assertion that "DMACC's purpose in bringing the Bear Paw D to light was to assert that the mark is so similar to Drake's Vintage D that Drake

---

[3] This illustrates why this Court cannot simply reverse the district court's clarification that the preliminary injunction does not include the DMACC Bear Paw D.  It would be unfairly prejudicial to DMACC to enjoin its use of the DMACC Bear Paw D when DMACC had no opportunity to present its affirmative defenses with respect to that trademark because it was not identified in Drake's Complaint or Motion for Preliminary Injunction.

Appellate Case: 24-3445     Page: 17     Date Filed: 05/02/2025 Entry ID: 5512772

should be precluded from enforcing its trademark rights on laches and estoppel grounds." (Brief of Appellee/Cross-Appellant, at 58.) Essentially, Drake argues that the district court could not find the marks dissimilar because DMACC did not dispute similarity. This is incorrect.

DMACC strongly disputed that any of its trademarks are confusingly similar to any valid trademark rights of Drake. However, DMACC pointed out that if the district court disagreed, there can be no presumption of irreparable harm because Drake did nothing about DMACC's use of the "D" in the DMACC Rebrand Logo for years (in the context of the DMACC Bear Paw D). (*See* App. 039-040, R. Doc. 87, at 39-40, Add. 039-040.) *See, e.g., Phyllis Schlafly Revocable Trust v. Cori*, 924 F.3d 1004, 1010 (8th Cir. 2019) (explaining that due to a five-month delay in seeking a preliminary injunction, "the trusts would not be entitled to such a presumption because they did not promptly seek preliminary relief concerning the alleged trademark infringement"); *Hubbard Feeds,* 182 F.3d at 603 (affirming district court's determination that delay in objecting to the use of a mark "belies any claim of irreparable injury pending trial"). DMACC did not assert that the

DMACC Bear Paw D is similar to Drake's alleged Vintage D—DMACC vehemently denied the similarity of all its trademarks to the Vintage D.

Because DMACC disputed the similarity of the parties' trademarks, there is no merit to Drake's argument that the district court could not find the DMACC Bear Paw D dissimilar from the Vintage D. Furthermore, it is clear that the district court's clarification on the DMACC Bear Paw D was based on Drake's failure to include that long-used trademark in its Complaint and Motion for Preliminary Injunction, not the dissimilarity between the DMACC Bear Paw D and the Vintage D. (*See* App. 045-046, R. Doc. 101, at 2-3, Add. 045-046.)

Importantly, if this Court disagrees and finds the district court's "conclusion that DMACC's bear paw D is visually distinct and fundamentally different from Drake's mark" (App. 046, R. Doc. 101, at 3, Add. 046) was in error, this Court must reverse or at least vacate the preliminary injunction for further proceedings regarding irreparable harm. This is because the district court disregarded the controlling case law above relating to Drake's delay in filing suit based solely on its conclusion that the DMACC Bear Paw D "is fundamentally different." (*See* App. 040, R. Doc. 87, at 40, Add. 040.) If this Court reverses or

Appellate Case: 24-3445    Page: 19    Date Filed: 05/02/2025 Entry ID: 5512772

vacates that conclusion, the preliminary injunction cannot stand because it was entered based on application of a presumption of irreparable harm, which cannot apply due to Drake's delay in objecting to the DMACC Bear Paw D. *See, e.g., Cori*, 924 F.3d at 1010; *Hubbard Feeds,* 182 F.3d at 603.

### D. This Court Should Not Assess Likelihood Of Confusion Between The DMACC Bear Paw D And The Vintage D For The First Time On Appeal.

Drake devotes the last several pages of its brief to a cursory analysis of the likelihood of confusion factors with respect to the DMACC Bear Paw D and Vintage D. It does so despite its acknowledgement that the district court "did not perform a *Squirt Co.* analysis on the Bear Paw D." (Brief of Appellee/Cross-Appellant, at 61; *see also* App. 046, R. Doc. 101, at 3, Add. 046.) Drake cannot appeal an analysis the district court did not conduct or a decision the district court did not reach. *See Wrist-Rocket*, 516 F.2d at 851 n.6 ("Absent unusual circumstances, issues not tried below will not afford the basis for reversal.") (citation omitted). This is reason enough to disregard Drake's arguments on the likelihood of confusion factors. Moreover, as explained above, it is clear that the district court's clarification regarding the DMACC Bear Paw D was based on its exclusion from Drake's Complaint and Motion for Preliminary

13

Injunction, which is a sufficient basis to support the district court's decision. (*See* App. 045-046, R. Doc. 101, at 2-3, Add. 045-046.) *See Devose*, 42 F.3d at 471.

In addition, as alluded to above, Drake cannot simply add the DMACC Bear Paw to the current injunction through this appeal when there has been no analysis of the likelihood of confusion or DMACC's defenses based on Drake's delay in objecting to the DMACC Bear Paw D. If this Court finds merit in any of Drake's arguments, it can only vacate and remand for further proceedings based on any instructions regarding the analysis or relevance of the DMACC Bear Paw D—reversing to include the DMACC Bear Paw D within the current injunction would unduly prejudice DMACC by depriving it of the opportunity to defend with respect to that trademark.

## III. CONCLUSION

If this Court does not grant the relief requested in DMACC's appeal (which would moot Drake's cross-appeal), DMACC respectfully requests that the Court affirm the district court's clarification that the preliminary injunction does not include the DMACC Bear Paw D for the reasons set forth above. If the Court is inclined to agree with Drake with

14

respect to the DMACC Bear Paw D, DMACC respectfully requests that the Court reverse or at least vacate and remand the district court's preliminary injunction because it was based on application of a presumption of irreparable harm after the district court found the DMACC Bear Paw D irrelevant. Likewise, vacatur and remand would be the appropriate remedy—as opposed to reversal with respect to the DMACC Bear Paw D—because DMACC has not had the opportunity to present its arguments and evidence relating to the likelihood of confusion factors and affirmative delay-based defenses for the DMACC Bear Paw D, which was not identified in Drake's Complaint or Motion for Preliminary Injunction.[4]

---

[4] Drake improperly included multiple memorandums of law submitted in the district court in its Separate Appendix. *See* Fed. R. App. P. 30(a)(2).

## DMACC'S REPLY IN SUPPORT OF ITS APPEAL

## I. DRAKE MISREPRESENTS THE APPLICABLE STANDARD OF REVIEW.

DMACC's appeal challenges the district court's entry of a preliminary injunction based on its determination that Drake currently owns a common law trademark in the Vintage D alone without a bulldog that can be broadly enforced to prevent DMACC from using any "block-style 'D' trademark in conjunction with any color combination of white and blue to denote their educational services, athletics, or ancillary good or services…even when it is paired with a DMACC house mark or other indicia of the college." (App. 043, R. Doc. 87, at 43, Add. 043.)

Drake falsely implies that the district court made no legal conclusions when it rendered its decision. (*See* Brief of Appellee/Cross-Appellant, at 15.) This is non-sensical and incorrect. Relevant to DMACC's appeal, "ownership of a trademark is a *mixed* question of law and fact." *PGP, LLC v. TPII, LLC*, 734 F. App'x 330, 333 (6th Cir. 2018) (citation omitted). Therefore, "only the factual side of the ownership equation receives clear-error review," while "[t]he ultimate determination of whether those facts add up to ownership is legal and reviewed *de novo.*" *Id.* at 333-34 (citation omitted); *see also Cooper Tire*

*& Rubber Co. v. St. Paul Fire & Marine Ins. Co.*, 48 F.3d 365, 369 (8th Cir. 1995) ("Mixed questions of law and fact that require the consideration of legal concepts and the exercise of judgment about the values underlying legal principles are also reviewed de novo.") (citation omitted).

## II. DRAKE DISREGARDS THE APPLICABLE STANDARD FOR A PRELIMINARY INJUNCTION IMPOSED BY THIS COURT.

Drake acknowledges that in *H&R Block, Inc. v. Block, Inc.*, this Court explained it must be "mindful that a movant carries a 'heavier' burden when granting a preliminary injunction has the effect of awarding the movant substantially the relief it could obtain after a trial on the merits." 58 F. 4th 939, 946 (8th Cir. 2023) (citation omitted). Drake also cannot dispute that the injunction in this case provides "the same relief [Drake] hopes to obtain permanently at trial"—namely, the cessation of all use of the DMACC Rebrand D and any other standalone block-style "D" in blue or white. (*See* Brief of Appellee/Cross-Appellant, at 16; App. 043, R. Doc. 87, at 43, Add. 043.)

Drake's attempt to distinguish this case fails because nothing in *H&R Block* or the authority on which it relies requires a pending trademark application for the heavier burden to apply. *See* 58 F. 4th at

17

946; *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987). Nevertheless, DMACC has a pending federal trademark application for the DMACC Rebrand Logo so there is no distinction. (*See* App. 085, R. Doc. 17, at 38.) Thus, when assessing the district court's decision, this Court should be mindful of the heavier burden Drake should have faced at the district court to prove its entitlement to the extraordinary relief it received.

## III. THE PRELIMINARY INJUNCTION IS UNSUPPORTED BECAUSE IT IS BASED ON THE VINTAGE D ALONE, FOR WHICH DRAKE DID NOT ESTABLISH CURRENT COMMON LAW TRADEMARK RIGHTS.

The first required element of Drake's asserted claims is ownership of a valid trademark. *See H&R Block,* 58 F.4th at 946; *Moon Seed LLC v. Weidner*, 604 F. Supp. 3d 780, 789 (S.D. Iowa 2022); *Weems Indus., Inc. v. Teknor Apex Co.*, 540 F. Supp. 3d 839, 848 (N.D. Iowa 2021). The district court found that Drake was likely to succeed on the merits of its trademark infringement claim based on Drake's assertion of common law trademark rights in the "Vintage D" alone (shown on the next page). (*See* App. 010-020, R. Doc. 87, at 10-20, Add. 010-020.)

18



For the reasons set forth in DMACC's opening brief and herein, this Court should reverse, or at least vacate and remand, that decision—thereby lifting the currently entered preliminary injunction against DMACC.

### A.    Drake's Registered Trademarks Are Irrelevant On Appeal.

Drake does not—and cannot—dispute that the district court disregarded and did not rely on Drake's registered trademarks for the "Academic D," "Athletic D," and "Marching Spike" to support entry of a preliminary injunction against DMACC.  (*See* App. 009, R. Doc. 87, at 9; Add. 009 ("Although Drake's registered marks are presumptive in use due to their registered status, there is no likelihood of confusion between DMACC's new logo and those registered marks.  They simply are not similar enough to one another to cause confusion to the public.") (citations omitted); App. 010, R. Doc. 87, at 10; Add. 010 ("Therefore, the main issue in the case is whether Drake has a valid common law trademark for its Vintage D and whether DMACC's new logo infringes

19

on that mark.") (citation omitted).)  Accordingly, Drake's registered trademarks are irrelevant to DMACC's challenge to the district court's preliminary injunction.

Likewise, Drake's disclaimer argument with respect to its Marching Spike registration is meritless.  Drake asserts that it "has some degree of registered trademark rights in the Vintage D alone by virtue of its non-disclaimed inclusion in the Marching Spike registration."  (Brief of Appellee/Cross-Appellant, at 24.)  The case Drake cites—*S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660 (7th Cir. 2016)—says nothing about disclaimers, let alone that lack of a disclaimer somehow means that a trademark owner has a federal registration in each individual component of its registered trademark.

Indeed, Drake's position flatly contradicts black letter trademark law.  *See, e.g.*, *In re National Data Corp.*, 753 F.2d 1056, 1059 (Fed. Cir. 1985) ("The absence of a disclaimer does not, however, mean that a word or phrase in a registration is, or has become, distinctive in the registered trademark, so that that part of the mark must be treated the same as an arbitrary feature.  The power of the PTO to accept or require disclaimers is discretionary under the statute, and its practice over the years has

been far from consistent. Thus, it is inappropriate to give the presence or absence of a disclaimer any legal significance.") (citations omitted); *see also id.* at 1059-60 ("The registration affords *prima facie* rights in the mark *as a whole*, not in any component."); *Igloo Prods. Corp. v. Brantex, Inc.*, 202 F.3d 814, 817 (5th Cir. 2000) (explaining that defendant's "contention"—which Drake is now asserting—"is false as a statement of law" because "the federal registration it had already received was for the *composite* mark, not the word mark alone" and the "*prima facie* presumption [ ] pertains to the *whole mark*—in this case the words-plus-penguin composite—rather than to any individual portion of the mark" and that "is true even if a registration application is accepted…without an explicit demand on the part of the PTO that the registrant disclaim any exclusive right to some portion of the complete trademark") (citations omitted).

Drake's registered trademarks are irrelevant to DMACC's challenge to the district court's preliminary injunction, which was entered based on Drake's purported common law rights in the Vintage D alone.

21

**B.** **The Limited Evidence Identified By Drake Does Not Establish Current Common Law Trademark Rights In The Vintage D Alone Without A Bulldog.**

Drake, not DMACC, distorts the applicable legal standards. This is not a case like *Medtronic, Inc. v. Catalyst Research Corp.*, 664 F.2d 660, 665 (8th Cir. 1981), cited by Drake, in which this Court's "preliminary assessment of [ ] probability of success on the merits differs somewhat from the district court's," but it affirmed because "the record in this case supports the district court's evaluation of the balance of equities." Here, the sole basis for the district court's conclusion that Drake is likely to succeed on the merits is unsupported by the record and therefore, a textbook legal error requiring reversal or vacatur due to the district court's abuse of discretion. *See H&R Block*, 58 F. 4th at 946; *MPAY Inc. v. Erie Custom Comput. Appls., Inc.*, 907 F.3d 1010, 1015 (8th Cir. 2020); *Kennedy Bldg. Assocs. v. CBS Corp.*, 476 F.3d 530, 534 (8th Cir. 2007).

### 1. Drake Admits Its Historic Evidence Is Insufficient.

As explained in DMACC's opening brief, much of the evidence Drake cited to try to establish enforceable common law trademark rights in the Vintage D alone is decades or even a century old. (*See* App. 052-056, R. Doc. 17, at 6-9.) Drake now admits it "did not cite these examples

22

to show *current* use" and that it "would perhaps be true" that the historic evidence supports abandonment if it was all Drake submitted. (Brief of Appellee/Cross-Appellant, at 27.) Because it is undisputed that the historic evidence cannot save Drake from the three-year presumption of abandonment, it is irrelevant to this appeal. *See* 15 U.S.C. § 1127 (providing that "[n]on-use for 3 consecutive years shall be prima facie evidence of abandonment").

### 2. Drake Agrees The Undated Evidence Is Irrelevant Because It Was Not Relied On By The District Court.

Drake concedes the "lack of reliance" by the district court on the admittedly "undated" photographs of merchandise Drake submitted, and agrees that the district court "instead" relied on other evidence to find common law rights. (Brief of Appellee/Cross-Appellant, at 26 (discussing the merchandise shown on App. 057, R. Doc. 17, at 10).) Because it is undisputed that the district court did not rely on this evidence to support its preliminary injunction, it is irrelevant to this appeal.[5]

---

[5] Drake's attempt to neutralize the case law cited by DMACC regarding the unreliability of undated evidence is baseless. Courts—including the district court here—have found undated evidence unreliable when deciding whether to enter a preliminary injunction. (*See* App. 018, R. Doc. 87, at 18, Add. 018.) *See, e.g.*, *RE/MAX of New England, Inc. v. Prestige Real Estate, Inc.*, No. 14-12121-GAO, 2014 WL 3058295,

23

### 3. The Limited Evidence Drake Agrees The District Court Relied On Is Insufficient.

To begin with, Drake misunderstands the applicable standards for abandonment. The Lanham Act provides that "[n]on-use for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127. "The trademark owner may rebut this presumption by producing evidence that he either used the mark during the statutory period or intended to resume or commence use." *Cervejaria Petropolis SA v. Ambev S.A.*, 787 F. App'x 727, 729 (Fed. Cir. 2019) (quotations and citation omitted). Here, the relevant time period for application of the presumption is three years prior to DMACC's adoption of the DMACC Rebrand Logo in October 2023—in other words, October 2020 through October 2023. Thus, to overcome the presumption, Drake needs to show use of the Vintage D alone in commerce in that time period or evidence that it intended to resume use of the Vintage D alone in commerce during

---

at *2 (D. Mass. July 7, 2014) (concluding that "[t]he undated photographs submitted by the plaintiffs are unreliable evidence that the defendants are continuing to use the RE/MAX name and marks" when deciding plaintiff's motion for a preliminary injunction).

Appellate Case: 24-3445    Page: 31    Date Filed: 05/02/2025 Entry ID: 5512772

that time period. *See id.* at 730 (explaining that "evidence of intent to resume use" must be during the "three consecutive years of nonuse").

With respect to alleged current use of the Vintage D alone, Drake admits that the district court relied solely on: (1) the National D Club and its "Double D Award"; (2) Michael Admire's sweaters; and (3) Drake the rapper's 2016 visit. (Brief of Appellee/Cross-Appellant, at 37; *see also* App. 019-020, R. Doc. 87, at 19-20, Add. 019-020.) None of these support the district court's finding that Drake has current, enforceable common law trademark rights in the Vintage D alone that are broad enough to support the entered injunction.

First, the use by Drake the rapper was in 2016—more than three-years before DMACC began using the DMACC Rebrand Logo in October 2023. (*See* App. 072-073, R. Doc. 17, at 25-26.[6]) Thus, even if Drake the rapper wearing a letterman's jacket constituted a use in commerce by Drake—which it did not—it cannot overcome the applicable presumption of abandonment because it is prior to the relevant time period. *See* 15

---

[6] The cited T-shirt featuring Drake the rapper does not include the Vintage D. (*See* App. 073, R. Doc. 17, at 26.)

Appellate Case: 24-3445     Page: 32     Date Filed: 05/02/2025 Entry ID: 5512772

U.S.C. § 1127.  Accordingly, Drake the rapper cannot support the Court's preliminary injunction.

Second, in regard to Michael Admire's sweaters, Drake does not even attempt to argue that it is involved in any way in Mr. Admire's decision to wear those sweaters.  A single employee's personal clothing selection at an unidentified number of basketball games is not a use in commerce by Drake to support the broad common law trademark rights the district court relied on to enjoin DMACC from using any standalone block-style D in blue or white.[7] *See id.*  At the very least, this Court must vacate and remand with instructions to the district court to evaluate the scope of any alleged common law trademark rights owned by Drake due to Mr. Admire wearing sweaters with a Vintage D at an unidentified number of basketball games.  One thing is clear, however, such limited use cannot establish common law trademark rights in all "educational services, athletics, [and] ancillary goods and services," which is necessary

---

[7] Drake argues that a licensee's use of a trademark constitutes use in commerce for the licensor, but there is no evidence in the record that Drake licenses (now or in the past) its purported rights in the Vintage D alone to anyone, including Mr. Admire, the National D Club, and Drake the rapper.

Appellate Case: 24-3445   Page: 33   Date Filed: 05/02/2025 Entry ID: 5512772

to support the current injunction.  (*See* App. 043, R. Doc. 87, at 43, Add. 043.)

Third, the National D Club and its "Double D Award" also cannot establish the broad common law trademark rights the district court relied on to enjoin DMACC.  There is no evidence that Drake uses the National D Club logo in commerce in connection with the sale or advertising of its goods or services.  *See* 15 U.S.C. § 1127.  Indeed, the only evidence in the record is an image of the logo itself without any allegations as to how it used.  (*See* App. 059, R. Doc. 17, at 12.)  The mere existence of the logo is insufficient to establish that Drake used the Vintage D alone as a trademark in commerce during the relevant time period from October 2020 to October 2023.

The same is true for the "Double D Award."  Drake is a university that offers for sale and sells educational services and related goods and services.  An annual award provided by an alumni organization to former student athletes is not a use in commerce to support the broad common law trademark rights on which the district court relied.  *See* 15 U.S.C. § 1127.  And the only evidence in the record is a photograph of an award from 2009—more than a decade before the relevant time period.  (*See*

27

App. 202, R. Doc. 1-21.) There is no evidence showing what the award looks like in 2020 to the present.

Further, the logo on the "Double D Award" in the record consists of two overlapping "Ds" in white (shown below)—not the Vintage D alone.



(*Id.*) It is undisputed that the DMACC Rebrand Logo does not use two "Ds". Thus, if Drake's common law trademark rights rely on the "Double D Award" from 2009 in the record, which is far from sufficient, this Court must at least vacate and remand for the district court to properly analyze if confusion is likely between the two "D" logo on the "Double D Award" and the DMACC Rebrand Logo. The "Double D Award" also includes the "Drake University" name (*see id.*), which would factor into the likelihood of confusion analysis.

Finally, neither Michael Admire's sweaters nor the National D Club "Double D Award" evidence Drake's intent to resume use of the Vintage D alone as a source-identifying trademark to identify Drake's educational services, athletics, and ancillary goods and services. In fact, Drake's

28

current brand guidelines prevent such use—it only allows use of the registered Academic D as a standalone "D" in certain circumstances under specific conditions. (*See* App. 369-370, R. Doc. 23-7, at 14-15 (explaining the Academic D "is sometimes used in situations where space or size limitations make the full logo cumbersome" and "only use the singular 'D' when 'Drake University' is displayed nearby").) Drake's indisputable brand requirements dispel any notion that Drake intended to resume use of the Vintage D alone as a source-identifying trademark during the relevant time period between October 2020 through October 2023. Drake's meager attempt to downplay its own brand standards as an "internal guide" falls short—whether it is "internal" or not has no impact on the document's bolded command to "[o]nly use Drake logos in the ways described and illustrated in this document." (App. 369, R. Doc. 23-7, at 14.)

For these reasons, the three "current" uses of the Vintage D alone that the district court relied on are insufficient to rebut the presumption of abandonment and support the broad preliminary injunction entered

against DMACC.[8]  *See Flavor Corp. of Am. v. Kremin Indus., Inc.*, 493 F.2d 275, 284-85 (8th Cir. 1974) (explaining that "this court adopted a de minimus rule in determining whether a common law trademark was entitled to injunctive protection" and "held that a significant penetration into a market must be shown before injunctive relief will be granted, and nominal or de minimus sales are not sufficient to justify that protection"); *see also Davis v. Walt Disney Co.*, 393 F. Supp. 2d 839, 844 (D. Minn. 2005) (explaining that "the proponent of the trademark must demonstrate that the usage of the mark was deliberate and continuous, not sporadic, casual or transitory.").[9]  Therefore, this Court should

---

[8] Drake does not rely on its 2020 throwback basketball shorts worn at a single game or the basketball court hidden from public view during games as evidence of its current use of the Vintage D alone.  Thus, Drake has not disputed DMACC's arguments as to why these uses are insufficient.  (*See* Defendants - Appellants' Opening Brief, at 34-35.)

[9] Drake incorrectly asserts that DMACC relies on *Davis* only to argue that the National D Club, Michael Admire's sweaters, and Drake the rapper are not uses in commerce and then wastes two pages trying to distinguish *Davis*.  (Brief of Appellee/Cross-Appellant, at 37-39.) DMACC relied on *Davis* for the same point it makes here, specifically, that isolated use of an alleged trademark does not establish enforceable common law rights.  (Defendants - Appellants' Opening Brief, at 35.) Drake does not dispute that legal standard.

30

reverse or at least vacate and remand the district court's preliminary injunction.

### C. At Best, Drake May Have Common Law Trademark Rights In The Vintage D In Combination With A Bulldog, Which Is What The District Court Should Have Analyzed To Assess Likelihood Of Confusion With The DMACC Rebrand Logo.

Consistent with the district court's analysis, Drake is forced to acknowledge that in recent years, it uses the Vintage D in combination with Drake's bulldog mascot. (*See* App. 019-020, R. Doc. 87, at 19-20, Add. 019-020; Brief of Appellee/Cross-Appellant, at 30-33.) As DMACC explained in its opening brief, these uses would only support common law trademark rights in the Vintage D in combination with a bulldog, consistent with Drake's Marching Spike federal trademark registration. The combined use of the Vintage D with a bulldog cannot be dissected to support broad common law rights in the Vintage D alone without a bulldog, particularly when there is no evidence in the record that Drake currently uses the latter as a source-identifying trademark.

Drake's position is akin to its disclaimer argument regarding its Marching Spike trademark registration discussed above and further evidences Drake's misunderstanding of trademark law. Just as a federal registration is only for the entirety of the registered trademark

31

regardless of disclaimer, common law trademark rights are based on use in commerce as a source-identifier. If a trademark owner uses a composite trademark, it obtains rights in that combination—not the individual components.

In order to establish that an individual component of the composite is itself a trademark, it is necessary to show that the component "performs an identifying function independent of its use in the composite." *JIPC Mgmt., Inc. v. Incredible Pizza Co.*, No. CV 08-04310 MMM (PLAx), 2009 WL 10671438, at *17 (C.D. Cal. June 24, 2009) ("Simply put, JIPC has not presented any evidence that 'Incredible Pizza Co.' serves to identify its restaurants independently of its use in the phrase 'John's Incredible Pizza Co.' Without such evidence, JIPC cannot claim that the less prominent portion of its mark, which it has never used separate and apart from the mark as a whole, functions as a[sic] independent trademark."); *see also, e.g.*, *Four Seasons Hotel Ltd. v. Koury Corp.*, 776 F. Supp. 240, 247 (E.D.N.C. 1991) (explaining that "[a]lthough the court is convinced that Koury has created a commercial impression of the composite service mark 'Holiday Inn-Four Seasons,' it finds no evidence in the record to support the proposition that Koury has

32

created a commercial impression of 'Four Seasons' separate and apart from 'Holiday Inn,'" which is necessary to establish that "part of the composite qualifies for trademark protection" on its own). Drake did not even attempt to make that showing for the Vintage D alone. To the contrary, the record shows that in the modern era, Drake has only used the Vintage D in combination with Drake's prominent and well-known bulldog mascot.

Likewise, Drake's suggestion that its bulldog mascot is not the prominent portion of any composite trademark consisting of a bulldog and the Vintage D is baseless. (*See* Brief of Appellee/Cross-Appellant, at 37 (arguing that "Griff, by himself, resembles every other bulldog—until he dons the Vintage D and becomes Drake's mascot").[10]) With only one exception, Drake's brand guidelines show the bulldog mascot without the Vintage D and instruct use of a "bulldog illustration" without the Vintage

---

[10] Drake's modification of the registered Marching Spike trademark is uncompelling and irrelevant. If DMACC replaced the bulldog head in Marching Spike with a bear head (which it has never done), the relevant inquiry would be whether confusion is likely between the two marks based on the multi-factor analysis. Likewise, Drake's argument regarding Mr. Admire is also unconvincing—DMACC strongly disputes that Mr. Admire's sweaters are sufficient to establish Drake's ownership of a common law trademark in the Vintage D alone when he wears them at Drake basketball games, let alone outside of that context.

33

D instead of photographs of the live mascot. (*See* App. 366, 372, 375-378, 385, 389, R. Doc. 23-7, at 11, 17, 20-23, 30, 34.) This demonstrates that Drake's bulldog mascot is recognizable as a symbol of Drake without the Vintage D and is the prominent component of any composite mark consisting of both.

Thus, this Court must at least vacate and remand for the district court to assess likelihood of confusion between the DMACC Rebrand D and the combination of a bulldog and the Vintage D as opposed to the Vintage D alone. *See, e.g.*, *H&R Block*, 58 F.4th at 947-48 ("When analyzing the similarity of the marks at issue, courts are to examine the impression that each mark in its entirety is likely to have on a purchaser exercising the attention usually given by purchasers of such products.") (internal quotations and citation omitted) (emphasis added); *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir. 1987) ("[I]n analyzing the similarities of sight, sound, and meaning between two marks, a court must look to the overall impression created by the marks and not merely compare individual features.") (emphasis added); *see also Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 764 (8th Cir. 2010) ("The use of identical, even dominant, words in common does not

automatically mean that two marks are similar.") (quotations and citation omitted). Drake's largely irrelevant discussion of the district court's confusion analysis does not change the fact that the district court analyzed the wrong trademark, which is reversible error.

### D. Drake's Irrelevant Arguments Regarding Third-Party "D" Trademarks Do Not Impact DMACC's Appeal.

Drake devotes almost six pages of its brief addressing third-party "D" trademarks for educational services or related goods and services. (*See* Brief of Appellee/Cross-Appellant, at 17-22.) While third-party "D" trademarks certainly impact the strength of any "D" trademarks owned by Drake, DMACC did not rely on those marks to challenge the district court's decision. (*See* Defendants – Appellants' Opening Brief, at 29-40.) *See, e.g.*, *H&R Block*, 58 F. 4th at 947 ("When examining the likelihood of confusion, a strong and distinctive mark is entitled to greater protection than a weak or commonplace one.").[11] DMACC simply pointed

---

[11] Drake misleadingly cites to McCarthy on Trademarks & Unfair Competition to imply that third-party trademarks are irrelevant to the strength of a mark, but the cited section says the opposite. *See* 1 McCarthy on Trademarks & Unfair Competition § 11:89 (5th ed. 2025) (explaining that "evidence of third-party *uses* on similar goods or services can indicate that the commercial strength of a mark is relatively weak"). Evidence of third-party use is indisputably in the record. (*See, e.g.*, App. 532-548, R. Doc. 23-19, 23-22, 23-23, 23-24.)

Appellate Case: 24-3445    Page: 42    Date Filed: 05/02/2025 Entry ID: 5512772

out the existence of third-party "D" trademarks in its opening brief; DMACC did not appeal the district court's analysis of the strength of Drake's purported trademark aside from asserting that the district court used the wrong mark in its likelihood of confusion analysis. (*See* Defendants - Appellants' Opening Brief, at 38-40.) Accordingly, Drake's arguments regarding third-party trademarks do not impact DMACC's challenge to the district court's incorrect decision that Drake has current, broad, common law trademark rights in the Vintage D alone.

Drake did not—and cannot—establish common law trademark rights in the Vintage D alone during the relevant time period between October 2020 and October 2023. Accordingly, Drake has not—and cannot—overcome the presumption of abandonment and the district court's preliminary injunction, which relies solely on broad, common law trademark rights in the Vintage D alone must therefore be reversed or at least vacated and remanded.

Appellate Case: 24-3445   Page: 43   Date Filed: 05/02/2025 Entry ID: 5512772

## IV. THE PRELIMINARY INJUNCTION IS OVERBROAD.

### A. It Is Undisputed That The Preliminary Injunction Prohibits Conduct That Is Not Identified In Drake's Complaint Or Motion For Preliminary Injunction, Both Of Which Are Based Entirely On DMACC's Alleged Uses Of A Standalone "D" After Its 2023 Rebrand.

Drake admits that DMACC's pre-2023 rebrand uses of a standalone block-style "D" in blue or white were not identified in Drake's Complaint or Motion for Preliminary Injunction. (*See* Brief of Appellee/Cross-Appellant, at 43.) That should end the inquiry and require reversal because the district court cannot enjoin conduct that was not identified in the Complaint. *See Devose*, 42 F.3d at 471 ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint…."). Drake's attempts to overcome this indisputable deficiency fail for many of the same reasons as its cross-appeal.

First, while Drake is incorrect that the pre-2023 rebrand uses of a standalone block-style "D" in blue or white are limited to a single basketball court (*see* App. 642, R. Doc. 97-2, at 3), the quantity is irrelevant to the question of whether it was properly included within the scope of the injunction.

**Second**, Drake blames DMACC for not identifying all historic uses of a standalone block-style "D" in blue or white, but ignores that DMACC had no reason to do so because the allegations in Drake's Complaint and Motion for Preliminary Injunction were limited to the "D" in the DMACC Rebrand Logo. (*See* App. 051, R. Doc. 17, ¶ 1; App. 083, R. Doc. 17, ¶ 145; App. 236, R. Doc. 1-78; App. 237, R. Doc. 1-79; App. 253, R. Doc. 18, ¶ 1; App. 254, R. Doc. 18, ¶ 5; Add. 051-057.) Indeed, DMACC had no reason to believe its historic uses of a standalone "D" were at issue until the district court entered its broad injunction, which is why DMACC promptly sought clarification regarding its scope. (*See* App. 635-637, R. Doc. 97.)

**Third**, in its opposition to Drake's Motion for Preliminary Injunction, DMACC raised its historic use of a standalone "D" solely to foreclose an irreparable harm finding. To illustrate Drake's delay in filing suit (which should have negated the applied presumption of irreparable harm), DMACC explained that "[g]iven the prominence of the letter 'D' in its colloquial name, DMACC has historically used a standalone 'D' to refer to DMACC" and cited the DMACC Bear Paw D as an "example" of such use. (App. 256-257, R. Doc. 23-3, at 1-2.). Drake

38

cites no authority to support the proposition that DMACC had to identify every historic use of a standalone "D" to make its delay-based argument with respect to irreparable harm.

Fourth, Drake's feigned ignorance of DMACC's pre-2023 rebrand public uses of a standalone "D"—on at least a basketball court and wall mural—lacks credibility and is irrelevant. *See Masters*, 631 F.3d at 469-70 (explaining that the trademark owner's actual knowledge as well as what it should have known are the relevant considerations when assessing delay in objecting). Further, because Drake provided no notice in its Complaint that DMACC's pre-2023 rebrand uses of a standalone "D" were at issue, DMACC had no opportunity to present its delay-based affirmative defenses. *See id.* at 469 (identifying defenses and applicable standards). This is unfairly prejudicial to DMACC and illustrates why the district court should not have enjoined conduct absent from the Complaint.

If this Court does not reverse the preliminary injunction in its entirety, it should at least reverse the district court's inclusion of DMACC's pre-2023 rebrand standalone "Ds" within the scope of the injunction.

39

## B. The Preliminary Injunction Should Not Include The DMACC Rebrand Logo.

Drake does not—and cannot—dispute that it only sought relief with respect to the standalone "D" in the DMACC Rebrand Logo, not the DMACC Rebrand Logo as a whole. (*See* App. 083, 087-089, R. Doc. 17, at App. 246, R. Doc. 4, at 36, 40-42.) For the reasons discussed above, this is a sufficient basis to exclude the DMACC Rebrand Logo (shown below) from the scope of the injunction. Indeed, Drake agrees that "the Rebrand Logo as a whole" should not be enjoined. (Brief of Appellee/Cross-Appellant, at 48.)



Moreover, Drake's reliance on placement of the ™ symbol in the DMACC Rebrand Logo lacks merit. Drake cites no rules governing the location of the ™ symbol and certainly cannot speak to DMACC's intentions. Likewise, Drake's allegations regarding DMACC's purported use of the "D" in the DMACC Rebrand Logo on its own do not impact the

40

issue before this Court, namely, whether the DMACC Rebrand Logo as a whole should be enjoined.

Drake also ignores the cited Eighth Circuit precedent regarding use of house marks (just as the district court did). Drake then puzzlingly claims that DMACC—as opposed to Drake and the district court—relied on the *Iowa Paint* and *Guthrie* cases that DMACC distinguished in its opening brief to illustrate the error in Drake and the district court's reliance on those cases. The district court's disregard of governing Eighth Circuit precedent regarding use of house marks further justifies exclusion of the DMACC Rebrand Logo from the scope of the injunction.

If this Court affirms entry of a preliminary injunction against DMACC, it must at least modify that injunction to exclude the DMACC Rebrand Logo (as a whole) and any standalone "D" used by DMACC prior to the 2023 rebrand.

## V.  CONCLUSION

For the above-stated reasons, DMACC respectfully requests that this Court reverse and/or vacate the district court's orders granting and clarifying the scope of the preliminary injunction.

41

Respectfully submitted,

Date: May 1, 2025  s/*Laura L. Myers*

R. Scott Johnson (#AT0004007)
Cara S. Donels (#AT0014198)
Erin M. Boggess (#AT0015950)
FREDRIKSON & BYRON, P.A.
111 East Grand Avenue, Suite 301
Des Moines, IA 50309-1977
Telephone: (515) 242-8900
E-mail: RSJohnson@fredlaw.com
CDonels@fredlaw.com
EBoggess@fredlaw.com

Laura L. Myers (Minn. #0387116)
FREDRIKSON & BYRON, P.A.
60 South 6th Street, Suite 1500
Minneapolis, MN 55402-4400
Telephone: (612) 492-7000
E-mail: LMyers@fredlaw.com

*Attorneys for Defendants - Appellants /
Cross-Appellees*

42

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned counsel of record hereby certifies that this brief complies with the following requirements:

1.      This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains  8,201  words.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft® Word 365 MSO (Version 2412) in fourteen (14)-point Century font.

3.      Pursuant to Eighth Circuit Rule 28A(h)(2), this brief has been scanned for viruses and the brief is virus-free.

4.      Pursuant to Eighth Circuit Rule 28A(h)(3), the electronic version of this brief was generated by printing to Portable Document Format from the original word processing file so the text may be searched and copied.

43

Date: May 1, 2025                         s/*Laura L. Myers*
                                          _____

R. Scott Johnson (#AT0004007)
Cara S. Donels (#AT0014198)
Erin M. Boggess (#AT0015950)
FREDRIKSON & BYRON, P.A.
111 East Grand Avenue, Suite 301
Des Moines, IA  50309-1977
Telephone:  (515) 242-8900
E-mail:  RSJohnson@fredlaw.com
         CDonels@fredlaw.com
         EBoggess@fredlaw.com

Laura L. Myers (Minn. #0387116)
FREDRIKSON & BYRON, P.A.
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
Telephone:  (612) 492-7000
E-mail:   LMyers@fredlaw.com

*Attorneys for Defendants - Appellants /*
*Cross-Appellees*

44

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2025, I electronically filed the foregoing Defendants - Appellants / Cross-Appellees' Response and Reply Brief with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/Cassie D. Buresh*
Cassie D. Buresh

Appellate Case: 24-3445    Page: 52    Date Filed: 05/02/2025 Entry ID: 5512772