# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

No. 24-3445
No. 25-1053

---

DRAKE UNIVERSITY,

*Appellee-Cross Appellant*,

v.

DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and
DES MOINES AREA COMMUNITY COLLEGE,

*Appellants-Cross Appellees*

---

APPEAL FROM THE U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

Case No. 4:24-cv-227
HON. STEPHANIE M. ROSE

---

APPELLEE / CROSS-APPELLANT'S
REPLY BRIEF

---

Joshua J. Conley
John D. Gilbertson
ZarleyConley PLC
580 Market Street, Suite 101
West Des Moines, Iowa 50266
Telephone: (515) 558-0200
Email: jconley@zarleyconley.com
Email: jgilbertson@zarleyconley.com
ATTORNEYS FOR
APPELLEE/CROSS-APPELLANT,
DRAKE UNIVERSITY

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ I

TABLE OF AUTHORITIES ................................................................. II

ARGUMENT ..................................................................................... 1

  A.  INTRODUCTION ..................................................................... 1

  B.  ENJOINING DMACC'S BEAR PAW D DOES NOT REQUIRE SPECIFIC REFERENCE .................................................................. 2

    1. The Bear Paw D is Included Within the Scope of Relief Requested in Drake's Complaint and Motion for Preliminary Injunction ....................... 2

    2. Eighth Circuit Precedent Does Not Prevent the Enjoinment of DMACC's Bear Paw D ........................................................................ 3

    3. Drake's Pre-Filing Lack of Knowledge of DMACC's Use of the Bear Paw D Does Not Foreclose Enjoinment Thereof ................................. 6

      *a) The Lanham Act's Statutory Notice Provision Does Not Apply to Infringement Actions* ......................................................... 6

      *b) DMACC is Not Unfairly Prejudiced by Including the Bear Paw D in the Injunction* .............................................................. 8

  C.  IT IS AN ABUSE OF DISCRETION TO FIND THE BEAR PAW D "VISUALLY DISTINCT" AND "FUNDAMENTALLY DIFFERENT" FROM DRAKE'S D ............................................................ 10

  D.  IT IS AN ABUSE OF DISCRETION TO RENDER A PSEUDO-INFRINGEMENT ASSESSMENT RELYING ON A SOLE FACTOR ..... 13

CONCLUSION ................................................................................ 16

CERTIFICATE OF SERVICE .......................................................... 18

CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION, AND TYPEFACE AND TYPE-STYLE REQUIREMENTS ................................. 19

Appellate Case: 24-3445    Page: 2    Date Filed: 05/27/2025 Entry ID: 5520129

# TABLE OF AUTHORITIES

**Cases**

*Barrington Music Prods., Inc. v. Guitar Center Stores, Inc.*, 2018 WL 1083815 (N.D. Ind. 2018)................................................................................8

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981) ....................12

*Devose v. Herrington*, 42 F.3d 470 (8th Cir. 1994)..................................................4

*H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939 (8th Cir. 2023) ...................... 1, 16, 17

*Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598 (8th Cir. 1999) ...................................................................................12

*LFP, IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424 (6th Cir. 2016) .................6

*Masters v. UHS of Delaware, Inc.*, 631 F.3d 464 (8th Cir. 2011)............................9

*SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086 (8th Cir. 1980)....................................13

*U.S. v. Auginash*, 266 F.3d 781 (8th Cir. 2001)........................................................5

*Univ. of Texas v. Camenisch*, 451 U.S. 390 (1981).............................................2, 16

*Valmor Prods. Co. v. Standard Prods. Corp.*, 464 F.2d 200 (1st Cir. 1972)...........8

*Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co.*, 516 F.2d 846 (8th Cir. 1975) ............................................................................................................8, 9

*Zhou v. Int'l Bus. Machs. Corp.*, 167 F.Supp.3d 1008 (N.D. Iowa 2016)............4, 5

**Statutes**

15 U.S.C. § 1072.................................................................................................6, 7

**Other Authorities**

H.R. 6196, 116th Cong. § 6 (2020).......................................................................11

**Treatises**

4 McCarthy on Trademarks & Unfair Competition § 31:40 (5th ed. 2025)..............7

ii

# ARGUMENT

## A. Introduction

DMACC's Bear Paw D (below left) is functionally identical to DMACC's Rebrand D (below right). It is the same letter, in the same font, in the same colors, and contains an indicia of DMACC (a bear paw). The district court's Injunction Order enjoined such marks, i.e., a block-style "D" trademark in conjunction with any color combination of white and blue … [t]his includes the use of such a "D" even when it is paired with a DMACC house mark or other indicia of [DMACC]," finding their use to be causing irreparable harm to Drake. App. 043; R. Doc. 87, at 43; Add. 043. The district court then inexplicably reversed course and excluded the Bear Paw D from the injunction in its Clarification Order. App. 046; R. Doc. 101, at 3; Add. 046.

 

This is an abuse of discretion. *See H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023) (in trademark case, abuse of discretion occurs when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; or when all proper factors, and no improper ones, are considered, the court in weighing

1

them commits a clear error of judgment).  DMACC avoids addressing the district court's divergent treatment of these marks head-on, focusing instead on ancillary matters.

## B. Enjoining DMACC's Bear Paw D Does Not Require Specific Reference

DMACC argues as though Drake specifically sought enjoinment **only** of DMACC's Rebrand D, and therefore cannot obtain enjoinment of the Bear Paw D. This is at odds with the text of Drake's requested relief and governing authority.  The inclusion of the Bear Paw D within Drake's requested relief is evident by DMACC's acknowledgement in the preliminary injunction proceedings that the Bear Paw D fell within the scope of relief Drake sought, which negates any prejudice DMACC may assert.

### 1. The Bear Paw D is Included Within the Scope of Relief Requested in Drake's Complaint and Motion for Preliminary Injunction

Preliminary injunctions, by definition, are sought on an expedited basis without the benefit of discovery.  *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (party seeking preliminary injunctive relief need not meet the same evidentiary burden as that required for a final judgment).  As Drake was not privy to the full scope of DMACC's trademark usage at the time Drake filed its complaint and preliminary injunction motion, Drake crafted these documents to account for unknowns.

2

In its complaint, Drake defines DMACC's "Infringing Marks" as "[t]he DMACC D and the New DMACC Colors **and variations thereon**." App. 097; R. Doc. 17, at 50 ¶ 215 (emphasis added). By DMACC's own admission, the Rebrand D incorporates the same D from DMACC's Campus Recreation mark, which includes the Bear Paw D. App. 952–955; R. Doc. 52, at 32–35 ¶¶ 24–30. The Bear Paw D is a "variation" of the enjoined Rebrand D.

Drake requested the district court "enter a preliminary injunction requiring DMACC to immediately cease use of (1) a standalone "D" and (2) a color scheme comprised only of blues and whites to denote the source of its educational services, athletics, and ancillary goods and services." App. 783; R. Doc. 18-1, at 37. As the Bear Paw D is a standalone D in a blue and white color scheme whose purpose is to denote the source of DMACC's goods and services, its falls cleanly within this scope.

The contention that Drake failed to account for the Bear Paw D in its requested relief is objectively incorrect.

### 2. Eighth Circuit Precedent Does Not Prevent the Enjoinment of DMACC's Bear Paw D

Even if the Bear Paw D was not included in the class of marks set forth in Drake's complaint and preliminary injunction motion, the high degree of similarity between the Bear Paw D and the enjoined Rebrand D is sufficient to enjoin both.

3

DMACC relies on two cases[1] to contend that a preliminary injunction cannot extend to conduct not expressly identified in the complaint. Drake already analyzed the factual and legal scenarios in both cases. *See* Appellee/Cross-Appellant's Brief, at 44–47. DMACC fails to address these, limiting its analysis of each case to a single, conclusory parenthetical. Appellants'/Cross Appellees' Response and Reply Brief, at 6.

Neither case requires express enumeration of all conduct sought to be enjoined; it is only necessary that the conduct enjoined bears **some relationship** to the claims and events set forth in the complaint and/or motion.[2] This is consistent with the equitable, expedited, and preliminary nature of preliminary injunctions. It is enough that the relief sought in the preliminary injunction is "of the same character that could be granted finally." *Zhou*, 167 F.Supp.3d, at 1011 (citations omitted). Enjoinment of the Bear Paw D—which DMACC admits is the same D as in the enjoined logo[3]—is undoubtedly of the same character as enjoinment of the Rebrand D.

---

[1] *Devose v. Herrington*, 42 F.3d 470 (8th Cir. 1994); *Zhou v. Int'l Bus. Machs. Corp.*, 167 F.Supp.3d 1008 (N.D. Iowa 2016).

[2] *See Devose*, 42 F.3d at 471 (retaliatory conduct for plaintiff's lawsuit were "entirely different" from the civil rights issue raised in plaintiff's complaint); *see also Zhou*, 167 F.Supp.3d at 1010 (finding no relationship between actions taken in retaliation for plaintiff's suit and the discrimination claims raised in the complaint).

[3] App. 952–955; R. Doc. 52, at 32–35 ¶¶ 24–30.

4

In addressing *Hustler*[4], DMACC makes much of the "changed circumstances" which gave rise to the injunction's modification, but the fact remains the enjoined conduct in *Hustler* appeared neither in the complaint nor in the motion for preliminary injunction. *See* Appellee/Cross-Appellant's Brief, at 55. Consistent with this Circuit's precedent *supra*, however, the Sixth Circuit found that the defendant's subsequent unauthorized use of a trademark owned by plaintiff bore some relationship to plaintiff's original complaint for unauthorized use of another, related trademark. *LFP, IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424, 429 (6th Cir. 2016). Thus, *Hustler* certainly permits **permanent** injunctive relief against conduct not expressly articulated in a complaint, so long as it shares a nexus with the complained-of (and enjoined) conduct. DMACC provides no justification why **preliminary** injunctive relief cannot do the same thing.

Basing the Clarification Order on this erroneous contention—that conduct must be expressly articulated in a complaint and preliminary injunction motion—was an abuse of discretion.

---

[4] While Drake acknowledges the *Hustler* case is from outside the Eighth Circuit, this does not negate all precedential value from its holding. *See U.S. v. Auginash*, 266 F.3d 781, 784 (8th Cir. 2001) ("Although we are not bound by another circuit's decision, we adhere to the policy that a sister circuit's reasoned decision deserves great weight and precedential value.") (quotations omitted).

### 3. Drake's Pre-Filing Lack of Knowledge of DMACC's Use of the Bear Paw D Does Not Foreclose Enjoinment Thereof

DMACC's arguments related to 15 U.S.C. § 1072 have no bearing on Drake's issue on appeal. The Bear Paw D was encompassed in the class of marks that Drake sought to be enjoined and even if it wasn't, the mark shares a close relationship with the Rebrand D that warrants the mark being enjoined. Whether Drake had constructive notice of the mark is nothing more than a red herring

#### a) The Lanham Act's Statutory Notice Provision Does Not Apply to Infringement Actions

DMACC argues that Drake should be charged with constructive knowledge of the Bear Paw D pursuant to 15 U.S.C. § 1072, thus triggering laches. Appellants'/Cross-Appellees' Response and Reply Brief, at 2–3. This is incorrect for several reasons.

First, to the extent DMACC's constructive notice argument would be given any weight, the Bear Paw D mark constitutes only a portion of DMACC's formerly registered[5] Campus Recreation mark (below).



---

[5] DMACC's Campus Recreation mark went abandoned on April 25, 2025 for failure to file renewal paperwork with the United States Patent and Trademark Office.

6

The Campus Recreation mark was registered for an ancillary service provided by DMACC, namely, providing facilities for recreation activities and providing information, news and commentary in the field of recreation and leisure activities, i.e., its student intramural leagues. Discovering this mark would have required Drake to continuously monitor the uncompetitive intramural recreational activities of Iowa's largest educational institution (in both geographic footprint and enrollment). This is one of the reasons that Drake crafted its requested relief to include infringing variations that it may not be aware of until discovery.

Second, the constructive notice set forth in 15 U.S.C. § 1072 only concerns the existence of a federal registration—it is *not* constructive notice of a potential infringer's use of the mark in the marketplace. 4 McCarthy on Trademarks & Unfair Competition § 31:40 (5th ed. 2025). McCarthy approvingly cites the First Circuit's decision in *Valmor Prods. Co. v. Standard Prods. Corp.*, in which it held that in analyzing the equitable defense of laches in infringement proceedings, the trademark owner is put on notice for laches only by **real-world events**, not by a statutorily created 'constructive notice' of a registration. 464 F.2d 200, 204 (1st Cir. 1972); *see also Barrington Music Prods., Inc. v. Guitar Center Stores, Inc.*, 2018 WL 1083815 (N.D. Ind. 2018) ("This isn't a cancellation proceeding before the Trademark Trial and Appeal Board. This is an action for infringement under the Lanham Act. . . and 15 U.S.C. § 1072 doesn't trigger laches in an infringement case.").

Appellate Case: 24-3445      Page: 10      Date Filed: 05/27/2025 Entry ID: 5520129

DMACC's caselaw does not refute this limitation of Section 1072. In *Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co.*, the plaintiff/appellant Wrist-Rocket Manufacturing Company sued Saunders for trademark infringement. 516 F.2d 846, 848–49 (8th Cir. 1975). Saunders claimed he had no knowledge of the plaintiff's mark, to which this Court declined to give credence, citing Section 1072. *Id.*, at 849 n.5. This finding, therefore, only demonstrates how Section 1072 operates when an *infringer* claims lack of knowledge of a mark—the opposite of what is happening here.

DMACC's reliance on *Masters v. UHS of Delaware, Inc.* is similarly inapplicable. 631 F.3d 464 (8th Cir. 2011). In that case, the Court did not opine on the merits of the infringing defendant's equitable defenses (including laches); it merely evaluated (and rejected) the defendant's contention on appeal that its defenses should not have gone to the jury—which incidentally found in plaintiff's favor, i.e., that defendant had failed to prove laches, acquiescence, or estoppel. *Id.*, at 469–470.

In short, Section 1072 is inapplicable to Drake's cross-appeal.

### b) *DMACC is Not Unfairly Prejudiced by Including the Bear Paw D in the Injunction*

DMACC asserts that including the Bear Paw D in the preliminary injunction is unfairly prejudicial because it had no opportunity to present its affirmative

8

defenses with respect to that particular mark. Appellants'/Cross-Appellees' Response and Reply Brief, at 10 n.3. This is highly dubious.

The salient components of DMACC's preliminary injunction resistance were that (1) Drake lacked trademark rights in a standalone D, and (2) Drake should have filed suit earlier based on the Bear Claw D. App. 847–848; R. Doc. 23-2, at i–ii. The former involves evaluating the scope of Drake's marks, the outcome of which would be the same regardless of which DMACC mark was at issue.

As to the latter, DMACC's reliance on the Bear Paw D objectively demonstrates that it understood the mark fell within Drake's requested relief. Indeed, DMACC never asserted that the Bear Paw D should be excluded from being enjoined. Instead, DMACC argued only that the similarity between the two marks evidenced that Drake waited too long to sue and that any harm that Drake claimed would have been happening for years. App. 857; R. Doc. 23-2, at 5 ("DMACC Has Long-Standing Trademark Rights in its Federally Registered "DMACC" Trademark and a Standalone 'D'—Both of Which Are Incorporated in the [enjoined logo]").

Given DMACC's admission that the Rebrand D and the Bear Paw D are similar—and the fact that the Bear Paw D *was* the basis of DMACC's defense—the arguments raised with respect to the former apply to the latter. While DMACC contends that additional arguments existed to exclude the Bear Paw D from the requested injunction, it does not articulate what those were. DMACC had the

9

opportunity to raise them in their resistance, but chose not to. Failing to raise arguments is not prejudice.

### C. It is an Abuse of Discretion to Find the Bear Paw D "Visually Distinct" and "Fundamentally Different" from Drake's D

The Injunction Order provides a complete analysis to justify enjoining the use of a block-style D, in blue and white, with or without DMACC indicia. App. 001–043; R. Doc. 87; Add. 001–043. Both the Rebrand D and the Bear Paw D fall within these parameters. The similarities between the Rebrand D and the Bear Claw D are so substantial that the Bear Claw D could replace the Rebrand D throughout the Injunction Order and the reader would be none the wiser. Indeed, the Injunction Order's scope objectively includes the Bear Claw D. The district court's subsequent exemption of the Bear Claw D, without analysis, was therefore an abuse of discretion.

DMACC sidesteps the dissonance in the district court's Injunction and Clarification Orders. Instead, DMACC narrowly argues that the Bear Paw D is visually dissimilar to Drake's D, and that DMACC raised its Bear Paw D before the district court *only* to refute the presence of irreparable harm. Appellants'/Cross-Appellees' Response and Reply Brief, at 11. This is problematic on two fronts.

The first is legal. DMACC alleges the injunction "was entered based on a presumption of irreparable harm which **cannot apply** due to Drake's delay in objecting to the DMACC Bear Paw D." Appellants'/Cross-Appellees' Response

10

and Reply Brief, at 11 (emphasis added). The presumption DMACC refers to flows from the Lanham Act, which states that a plaintiff seek an injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits. 15 U.S.C. § 1116(a). While a plaintiff's delay may be relevant to the ultimate question of whether award injunctive relief is justified under *Dataphase*,[6] it does not preclude application of the presumption in the first place. *Id.* DMACC cites *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, but the plaintiff in that case did not establish a likelihood of success on the merits, and thus would not have been entitled to any presumption of harm. 182 F.3d 598, 603 (8th Cir. 1999). *Hubbard* also predates the codification of the presumption into Section 1116(a) of the Lanham Act, which was amended in 2020 as part of the Trademark Modernization Act. H.R. 6196, 116th Cong. § 6 (2020).

The second reason DMACC's contention is problematic is practical, namely that it places DMACC in a catch-22. For DMACC to claim that the Bear Paw D undermines the existence of irreparable harm *now*, the Bear Paw D must necessarily be similar to Drake's D—otherwise, there would have been no reason to act against it when DMACC first adopted it. Thus for DMACC's laches argument to lie,

---

[6] *Dataphase Sys., Inc. v. C L Sys., Inc*., 640 F.2d 109 (8th Cir. 1981)

Appellate Case: 24-3445    Page: 14    Date Filed: 05/27/2025 Entry ID: 5520129

similarity between the Bear Paw D and Drake's D is required. Conversely, if the Bear Paw D is dissimilar, it would not have triggered Drake's obligation to act.

DMACC cannot have it both ways. The Bear Paw D cannot be dissimilar to Drake's D for purposes of a *SquirtCo.*[7] analysis, but also be so similar that it would have triggered Drake's obligation to bring suit to enforce its trademark rights.

DMACC proclaims that if the Bear Paw D is found similar to Drake's D, the preliminary injunction must be reversed because it would necessitate a finding that no irreparable harm could have occurred. Appellants'/Cross-Appellees' Response and Reply Brief, at 12. This is untenable. The similarity between the Rebrand D (which incorporates the Bear Paw D) and Drake's D was one of the reasons the district court determined that Drake was likely to succeed on the merits under *SquirtCo.*, which is precisely what gave rise to a presumption of irreparable harm under 15 U.S.C. 1116(a) in the first place. App. 038–39; R. Doc. 87, at 38–39; Add. 038–39. DMACC cannot also rely on similarity to rebut the presumption.

Furthermore, DMACC has only ever used the Bear Paw D in connection with its **intramural** rec leagues, which by definition is an internal use about which Drake would have no reason to know of. App. 901–902; R. Doc. 40, at 3–4. Such limited, internal use is vastly different from the use of a standalone D to denote the college

---

[7] *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086 (8th Cir. 1980)

12

as a whole, which DMACC did not begin to do until it launched its rebrand in late 2023. The district court correctly noted that Drake was in contact with DMACC about this by February, and that Drake should not be charged with neglect for simply attempting to resolve the dispute without court intervention. App. 040; R. Doc. 87, at 40; Add. 040.

DMACC is thus adhering simultaneously to mutually exclusive positions, neither of which speak to the district court's error in the Clarification Order finding that the Bear Paw D did not infringe Drake's trademark rights despite no analysis.

### D. It is an Abuse of Discretion to Render a Pseudo-Infringement Assessment Relying on a Sole Factor

In its Clarification Order, the district court classified prior uses of block-style Ds in blue and white as marks which "fall cleanly within the scope of the injunction." App. 047; R. Doc. 101, at 4; Add. 046. This class of marks was derived from a complete *SquirtCo.* analysis in the Injunction Order, and DMACC has never argued that the Bear Paw D should be excluded therefrom based on those factors. Yet, the Bear Paw D, which is part of this class of marks, was exempted from the Injunction Order without the district court conducting a *SquirtCo.* analysis. This exclusion, without proper analysis, and without being raised by DMACC, is an abuse of discretion.

Drake is not, as DMACC suggests, asking this Court to perform a *SquirtCo.* analysis between Drake's D and DMACC's Bear Paw D for the first time on appeal.

13

In rendering the Injunction Order, the district court rendered an analysis that logically applies to the Bear Paw D given its functional identity to the Rebrand D. However, the district court asserted it did not perform a separate analysis of the mark under the factors set forth in *SquirtCo.*, instead electing to exclude the mark on an alleged visual distinction that was not articulated by the court or argued by DMACC. App. 046; R. Doc. 101, at 3; Add. 046.

To demonstrate *why* it was an abuse of discretion for the district court to arrive at the opposite conclusion for the Bear Paw D as it did with respect to the Rebrand D, Drake provided an abbreviated likelihood of confusion analysis. This was done by simply highlighting the district court's findings in the Injunction Order that apply equally to the Bear Paw D.

For its rebuttal, DMACC again relies on *Wrist-Rocket*, this time for the proposition that a litigant "cannot appeal an analysis the district court did not conduct or a decision the district court did not reach." Appellants'/Cross-Appellees' Response and Reply Brief, at 13. However, while the district court may have declined to conduct a distinct *SquirtCo.* analysis on the Bear Paw D, it certainly reached a decision as if it did. This stands in contradiction to this Court's criteria for evaluating a district court's abuse of discretion in trademark cases, which includes a failure to consider relevant factors and rendering a decision which constitutes a clear error of judgment. *H&R Block,* 58 F.4th at 946.

14

The procedural posture in *Wrist-Rocket* is also vastly different from this one. There, discovery was completed and the case went to trial, yet the appellant argued for the first time on appeal that the appellee abandoned the mark at issue. *Id*. The present appeal concerns a preliminary injunction, which was sought on an expedited basis without the benefit of discovery. It is well-established that a party seeking preliminary injunctive relief need not meet the same evidentiary burden as that required for a final judgment. *See Camenisch*, 451 U.S. at 395.

To the extent the district court believed the Bear Claw D should be excepted from the preliminary injunction, the court failed to consider several relevant factors that would permit the mark's exclusion from the Injunction Order. Even if it had considered all relevant factors, its ultimate decision would be a clear error of judgment given the similarity of the Bear Paw D to the Rebrand D, the latter of which was found to be so similar and causing such irreparable harm as to warrant preliminary injunctive relief. An explanation of this requires a discussion of the applicable likelihood of confusion factors. Under DMACC's proposed framework, an incomplete district court analysis could never be challenged. *H&R Block,* 58 F.4th at 946.

15

## CONCLUSION

The lower court abused its discretion by overlooking (or disregarding) Drake's request to enjoin infringement of DMACC's use of a standalone D, which Drake articulated as including "[t]he DMACC D and the New DMACC Colors **and variations thereon**." The Bear Paw D's inclusion within the scope of requested relief is demonstrated best by DMACC's admission that the Rebrand D is a derivative of the Bear Paw D.

The lower court also abused its discretion by exempting the Bear Paw D from the Injunction Order when the mark falls squarely within its scope and the analysis conducted by the district court as it relates to the Rebrand D applies equally to the Bear Paw D.

Drake thus respectfully requests that this Court reverse the Clarification Order (App. 044–047; R. Doc. 101; Add. 044–047) to the extent necessary to include the Bear Paw D within the scope of the Injunction Order, or in the alternative vacate the Clarification Order and remand with instructions to analyze the Bear Paw D in accordance with the tests set forth in *SquirtCo.* and *Dataphase*.

16

Respectfully submitted,

Dated: May 23, 2025        **ZARLEYCONLEY PLC**

By:    /s/John D. Gilbertson
        /s/Joshua J. Conley
        John D. Gilbertson, AT0014515
        Joshua J. Conley, AT0011828
        580 Market Street, Suite 101
        West Des Moines, IA 50266
        Telephone:  (515) 558-0200
        Facsimile:   (515) 558-7790
        jgilbertson@zarleyconley.com
        jconley@zarleyconley.com
        **ATTORNEYS FOR**
        **APPELLEE/CROSS-APPELLANT**

17

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2025, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/John D. Gilbertson

Appellate Case: 24-3445    Page: 21    Date Filed: 05/27/2025 Entry ID: 5520129

## CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION, AND TYPEFACE AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   **X** This document contains  3689  words; **or**

   __ This brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   **X** This document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font; **or**

   ___This document has been prepared in a monospaced typeface using _____ with _____ characters per inch in ___ style.

3. The undersigned further certifies that the electronic version of this brief has been scanned for viruses and is virus-free.


Dated: May 23, 2025                    /s/John D. Gilbertson_____
                                       John D. Gilbertson
                                       Attorney for Plaintiff-Appellant

19